**UNITED STATES of America, Plaintiff,**

*v.*

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court, S. D. New York.

Sept. 11, 1979.

U.S. Dept. of Justice, Antitrust Div., for plaintiff United States of America.

Cravath, Swaine & Moore, New York City, for defendant IBM.

## MEMORANDUM

EDELSTEIN, Chief Judge:

On July 19, 1979, International Business Machines Corporation, defendant in this civil antitrust action, filed an affidavit that asked this court to disqualify itself from further participation in the proceedings, pursuant to 28 U.S.C. sections 144, 455, and the fifth amendment of the United States Constitution. The affidavit, signed by five "outside" directors on behalf of the corporation, states the following conclusion: "We believe that Chief Judge David N. Edelstein, the Judge presiding over the trial in the above-captioned action, has a personal bias and prejudice against IBM and in favor of plaintiff, that his impartiality in this action may reasonably be questioned, that he has a bent of mind that will prevent impartiality of judgment, and that his bias and prejudice could not have come from any source other than an extrajudicial source." IBM Aff. ¶ 4.

The conclusion quoted above is based upon the contents of nine affidavits of IBM witnesses,[1] plus a single joint affidavit of 11 IBM attorneys (hereinafter Joint Affidavit) supported by 26 appendices bound in nine volumes and containing over 2,000 pages.

---

1. IBM has to date presented the live testimony of 19 witnesses.

The multiple affidavits and voluminous appendices submitted to this court contain a myriad of allegations, many of them repetitious or overlapping, and many of them argumentative in nature, covering a seven-year period from April 1972 through June 1979. Even the attempt of the Joint Affidavit to provide an "Overview of Proof" covers 15 pages. In essence, however, the numerous allegations can be reduced to four categories: (1) adverse rulings by the court on motions, evidentiary matters, and testimony, which IBM characterizes variously as incorrect, inconsistent, and punitive; (2) allegedly hostile treatment by the court of IBM's witnesses, including adverse comments on their reliability, frequent interruptions of their testimony and putting numerous questions to them, compared to the court's allegedly protective attitude towards plaintiff's witnesses; (3) statements by the court allegedly revealing an antipathy towards IBM counsel; and (4) actions by the court allegedly creating a record "that cannot be subjected to full and adequate appellate review." Joint Aff. at 45.

The relevant statutory provisions are set forth below.[2] Although this court has serious reservations about the formal sufficiency of IBM's affidavit and certificate of counsel, the court will not dwell on them.[3] This Memorandum will discuss whether the claims are raised in timely fashion, and whether this court should disqualify itself pursuant to applicable law.[4]

**2.** 28 U.S.C. § 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 455, prior to its 1974 amendment, provided:

> Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

28 U.S.C. § 455, as amended effective December 5, 1974, by Pub.L.No. 93–512, § 1, 88 stat. 1609, provides in relevant part:

> (a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

Whether the earlier or the present version of section 455 applies to IBM's instant request will be discussed *infra*.

**3.** Questions raised by the procedure IBM has chosen to follow are, in brief: (1) whether, under 28 U.S.C. § 144, a party may file a merely conclusory affidavit, although ostensibly relying on factual allegations in an accompanying affidavit of counsel; (2) whether, under 28 U.S.C. § 144, counsel of record must certify to counsel's own good faith, in addition to the good faith of the party, *see In re Union Leader*, 292 F.2d 381, 384–85 (1st Cir.), *cert. denied*, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); and (3) whether, pursuant to Rule 7(b), Fed.R.Civ.P., IBM is required to proceed by noticed motion in order to invoke 28 U.S.C. § 455 and the due process clause of the fifth amendment. Because IBM did not file a motion, the court has not been provided with its memorandum of law. *See* S.D.N.Y.Gen.R. 9(b).

**4.** Judges have, on occasion, referred the question of their own disqualification to another judge. *See, e. g., United States v. Grinnell Corp.*, 384 U.S. 563, 582–83 n. 13, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Tenants and Owners in Opposition to Redevelopment v. United States Dep't of HUD*, 338 F.Supp. 29, 31 (N.D. Cal.1972). More frequently, however, no such reference is made, because the procedure is cumbersome and time-consuming, *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979), and because the judge presiding over the case is in the best position to appreciate the circumstances surrounding the allegations contained in the affidavit, *United States v. Mitchell*, 377 F.Supp. 1312, 1315–16 (D.D.C.1974), *aff'd sub nom.*

*Timeliness under 28 U.S.C. §§ 144 and 455*

■ Section 144 requires a "timely" affidavit to invoke its disqualification procedure. By contrast, section 455 both before and after its 1974 amendment "is wholly silent about procedure," *United States v. Wolfson*, 558 F.2d 59, 62 n. 11 (2d Cir. 1977), (quoting 13 Wright, Miller & Cooper, Federal Practice & Procedure § 3550 (1975)), and thus contains no explicit timeliness requirement. Because IBM's affidavit invokes section 455, it becomes necessary to inquire as a threshold matter whether timeliness standards also apply to section 455. In recent decisions, the Second Circuit has applied timeliness criteria to section 455. *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958–59 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979) (claim under pre-amendment section 455 held untimely); *United States v. Daley*, 564 F.2d 645, 651 (2d Cir. 1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978) (protracted delay "undermine[s]" motion under amended section 455). Moreover, there is no evidence that section 455 was intended to overrule *sub silentio* the explicit and strictly observed timeliness limitations contained in section 144. Such a construction would authorize disgruntled litigants to bypass the strictures of section 144 by invocation of section 455 far along in a proceeding, after testing the temper of the court. *United States v. Conforte*, 457 F.Supp. 641, 654 n. 7 (D.Nev.1978). This was manifestly not contemplated by the 1974 amendment to section 455. *See* H.R.Rep. No. 93–1453, 93d Cong., 2d Sess. 5, *reprinted in* 3 [1974] U.S. Code Cong. & Admin.News, pp. 6351, 6355. Therefore, this court will inquire into the timeliness of IBM's affidavit under sections 144 and 455.

Section 144 limits filing of the affidavit to "not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time."

*United States v. Haldeman*, 181 U.S.App.D.C. 254, 559 F.2d 31 (D.C. Cir. 1976), (en banc) (per curiam) *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). In this case, the

Because the district courts no longer sit in terms, 28 U.S.C. § 138 (1976), the ten-day provision has been replaced, at least by some courts, with statements that the affidavit be filed before trial, *see Roussel v. Tidelands Capital Corp.*, 438 F.Supp. 684 (N.D.Ala.1977), or even before invoking the powers of the court at all, *Hall v. Burkett*, 391 F.Supp. 237 (W.D.Okl.1975). The "good cause" provision has always been understood to require filing "at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).

■ There are two branches to the timeliness inquiry. First, the timing of a submission must be measured on an absolute scale. That is, the remoteness of the disqualification request from the commencement of the proceeding necessarily bears on its timeliness, for there are manifold and patent disadvantages in transferring the case to another judge who must familiarize himself with issues already decided. *Craven v. United States*, 22 F.2d 605, 608 (1st Cir. 1927), *cert. denied*, 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (1928). The Second Circuit perhaps more than most has emphasized this principle. *United States v. Daley*, 564 F.2d 645, 651 (2d Cir. 1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978), identified the passage of "ten days of trial, with all the attendant expenditure of judicial resources" preceding the recusal motion as a factor distinct from the appellant's knowledge of allegedly disqualifying circumstances long before bringing on the motion. A similar statement in *Rosen v. Sugarman*, 357 F.2d 794, 797–98 (2d Cir. 1966), as to affidavits not filed at the threshold of litigation was quoted with approval in *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). Indeed,

court has not been asked by IBM to refer its application to another judge and will proceed to rule on it.

even when the affidavit is held timely, the fact that it is not filed at the outset of litigation weighs against the affiant on the question of legal sufficiency, for " 'the statute does not permit second-guessing.' " *Tenants and Owners in Opposition to Redevelopment v. United States Dep't of H.U.D.*, 338 F.Supp. 29, 32 (N.D.Cal.1972), (quoting *In re Union Leader Corp.*, 292 F.2d 381, 390 (1st Cir. 1961)).

The present submission is offered over seven years after this court assumed control of this case. This period of time has not been characterized by inaction. Six hundred twelve trial days have consumed over 90,000 transcript pages. Approximately 8,400 exhibits have been received. Seventy-one live witnesses have been heard; several hundred have testified by deposition. The pretrial transcript alone consists of over 5,000 pages. The court has issued 66 opinions and 137 memorandum endorsements. Defendant's present submission recites rulings and statements by the court and other episodes throughout this record, running at least as far back as a discovery order entered almost seven years ago and violated by defendant, and contempt proceedings held thereafter. Joint Aff. at 41. The point needs no belaboring that this affidavit comes late in the day.

Perhaps to avoid the telling effect of these facts the present affiants apparently seek to justify their submission under the second branch of timeliness analysis, that is, as being filed "at the earliest moment after knowledge of the facts" alleged to require disqualification. *Patrick*, 542 F.2d at 390. Thus, the underlying affidavit of counsel avers:

> We have for some time avoided the judgment we have now reached, mindful that counsel for litigants may often perceive bias or prejudice on the part of a judge where others, not personally involved in the heat of litigation, may reasonably doubt those perceptions or conclude that what is perceived as bias is merely adverse rulings on the merits of individual controversies or the hint of such rulings in the future.

> What in the past we saw as extremely vexatious and wrong-headed actions by Chief Judge Edelstein may now, we believe, be seen as strong indications of bias and prejudice . . . .

> What makes further proceedings before Chief Judge Edelstein now impossible are the events surrounding the commencement and presentation of IBM's direct case, crystallized by the recent conduct and rulings of the last few weeks . . . .

Joint Aff. at 4–6. These "events" are said to be: (1) a series of orders by this court resulting in the issuance and enforcement of subpoenas duces tecum served on defendant's witnesses; (2) the court's allegedly hostile treatment of defendant's witnesses; and (3) evidentiary and procedural rulings during defendant's direct case unfavorable to IBM and allegedly inconsistent with rulings during plaintiff's direct case.

This new and conveniently acquired interpretation of events long past, supposedly prompted by recent events, is not the kind of "discovery of new facts" that justifies an otherwise untimely submission. For example, in *California v. Kleppe*, 431 F.Supp. 1344 (C.D.Cal.1977), the complaint had been filed on October 29, 1976. The judge did not become aware until April 25, 1977 that a certain company in which he held stock might be affected by a decision in the case at bar; similarly counsel did not become aware of the court's stock holdings until that same day. Under such circumstances, an application under sections 144 and 455 filed four days later was held timely. By contrast, in *Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497, 510 (D.S.C. 1975), the affiant called into question a series of remarks made by the court that transpired between October 1971 and January 1974. The affidavit was not filed until April 1975, and counsel sought to justify the delay by claiming that "the disqualifying facts . . . were not appreciated as showing bias and prejudice until [the] court issued its rulings of November 27 and December 19, 1974." *Id.* The court held the affidavit untimely.

The *Duplan* fact pattern is especially apposite here, where IBM counsel similarly aver that recent decisions and orders by the court have caused them only now to reach an awareness that prior actions of the court were due to bias or prejudice. Yet this is by no means grounds for justifying a submission at this late stage, for section 144 "was never intended to enable a discontented litigant to oust a judge because of adverse rulings," *Ex parte American Steel Barrel Co.*, 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913); nor should it allow a litigant to "sampl[e] the temper of the court before deciding whether or not to file an affidavit of prejudice," *Peckham v. Ronrico Corp.*, 288 F.2d 841, 843 (1st Cir. 1961). The reason is clear: the proper time to challenge the merits of judicial acts is on appeal from a final judgment, or where permitted, by interlocutory appeal. *In re J. P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943). This principle is too firmly embedded to yield to an argument that the cumulative effect of rulings needed to be assayed before a properly supported affidavit could be drawn. *Davis v. Cities Service Oil Co.*, 420 F.2d 1278, 1282 (10th Cir. 1970); *Duplan*, 400 F.Supp. at 509, 510.

IBM's affidavit is untimely under both sections 144 and 455 for the reasons stated above. Yet, the court will give full consideration to the legal sufficiency of the affidavit, since its impartiality has been questioned.

### Sufficiency under 28 U.S.C. § 144

The disqualification procedure set forth in section 144 requires that the affidavit filed by a party be "sufficient" as well as timely. The requirement of legal sufficiency has been interpreted to mean a judge must rule whether the reasons and facts stated in the affidavit "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Berger v. United States*, 255 U.S. 22, 33–34, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921); *see United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979); *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). The affidavit must "show a true personal bias, and must allege specific facts and not mere conclusions or generalities." *Brotherhood of Locomotive Firemen and Enginemen v. Bangor and Aroostook R. Co.*, 127 U.S.App. D.C. 23, 29, 380 F.2d 570, 576 (D.C.Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 461 (1967). Moreover, the judge is presumed to be impartial, *Wolfson v. Palmieri*, 396 F.2d 121, 126 (2d Cir. 1968); *United States v. Mitchell*, 377 F.Supp. 1312, 1316 (D.D.C.1974), *aff'd sub nom. United States v. Haldeman*, 181 U.S.App.D.C. 254, 559 F.2d 31 (D.C.Cir. 1976) (en banc) (per curiam), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), and a substantial burden is imposed on the affiant to demonstrate that such is not the case, *see, e. g., United States v. Civella*, 416 F.Supp. 676, 682 (W.D.Mo.1975) (citing cases). Until such a ruling upon legal sufficiency has been made, the judge retains jurisdiction over the proceeding in all respects, *see Ex Parte American Steel Barrel Co.*, 230 U.S. 35, 44, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913); *Daily Mirror, Inc. v. New York News, Inc.*, 533 F.2d 53, 56 n. 5 (2d Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 140 (1976); *In re Union Leader Corp.*, 292 F.2d 381, 383–84 (1st Cir.), *cert. denied*, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). Only after a judge finds that the facts asserted establish a legally sufficient claim of personal bias or prejudice must the mandate of section 144 be followed that "such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

*Under section 144 the court cannot inquire into the truth of the matters alleged but must accept them as true for the purpose of ruling upon their legal sufficiency, however unfounded they may be in fact. Berger v. United States, 255 U.S. 22, 36, 41 S.Ct. 230, 65 L.Ed. 481 (1921). This statutory obligation, however, does not preclude the court from putting the facts alleged*

into their proper context and examining the surrounding circumstances. *See, e. g., Rosen v. Sugarman,* 357 F.2d 794 (2d Cir. 1966); *Foster v. Medina,* 170 F.2d 632 (2d Cir. 1948), *cert. denied,* 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442 (1949); *United States v. Zagari,* 419 F.Supp. 494 (N.D.Cal. 1976). As stated *supra,* IBM's manifold allegations can be put roughly into four broad categories: Adverse rulings, hostile treatment of IBM's witnesses, antipathy to IBM's counsel, and frustration of IBM's attempt to make a clear record for appellate review.

IBM first claims that the court's rulings on evidence, procedure and the conduct of the trial have been overwhelmingly adverse, that the rulings have been incorrect, inconsistent, and at times punitive, and "have been based on a single principle: plaintiff wins and IBM loses." Joint Aff. at 36. IBM states, in part, that it has lost, and the government won, 86% of all objections and oral motions made by either side to documents and testimony during trial; and that IBM has lost 74 of 79 contested written motions decided by the court in the past seven years. Joint Aff., Appendix 25.

What IBM fails to note is that IBM itself was responsible for raising the overwhelming majority of objections at trial.[5] The government has addressed this point in its Memorandum in Opposition to IBM's Affidavit, August 9, 1979, at 10:

IBM lodged 3,631 objections to plaintiff's documents now in evidence. The Government's corresponding objections to IBM's documents in evidence number only 653, although IBM has introduced approximately 1,500 more exhibits than the Government. To preserve its record, IBM counsel insisted on separate oral hearsay objections to most of plaintiff's exhibits, and urged that routine internal IBM documents were not business rec-

ords. In contrast, plaintiff's lawyers heeded the Judge's repeated admonition that mere technical objections made for the sake of objecting would not be countenanced. IBM counsel lodged 1,937 oral motions and objections to testimony ruled on by the Court while plaintiff lodged only 870.

The fact that IBM lost a majority of its objections and motions indicates not bias of the judge but rather lack of merit to the objections and motions. It is not appropriate in response to an affidavit of bias or prejudice for this court to reexamine the merits of any or all questions previously decided, for such rulings are subject to correction on appeal. *See In re Federal Facilities Realty Trust,* 140 F.Supp. 522, 525 (N.D.Ill.1956).

More important, IBM's claim of bias based upon the court's adverse rulings is legally insufficient, because section 144 requires "personal bias or prejudice," stemming from an extrajudicial source. As the Supreme Court stated with reference to the statutory predecessor of section 144:

It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause.

*Ex parte American Steel Barrel Co.,* 230 U.S. 35, 43–44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913). This interpretation of the statute was reaffirmed by the Court in *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966): "The alleged bias and prejudice to be dis-

---

**5.** IBM does note that it was responsible for filing 51 of the 79 written motions decided by the court, but fails to place these motions in their proper context. IBM's summary of decisions is not a comprehensive summary of the dispositions of the legal issues decided by this court in this case. It does not, for example,

include IBM's motions involving third parties. Further, their summary of motions won and lost is misleading, because IBM includes as motions lost motions in which they received partial, but not full relief, and motions which consisted, in whole or in part, of reargument of motions previously lost.

qualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *See also In re J. P. Linahan,* 138 F.2d 650 (2d Cir. 1943).

Thus, the procedures set forth in section 144 are not available to a party who is dissatisfied with a court's adverse rulings. "Repeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of bias and prejudice." *Maret v. United States,* 332 F.Supp. 324, 326 (E.D. Mo.1971); *see also United States v. Shibley,* 112 F.Supp. 734, 738 (S.D.Cal.1953). The Second Circuit has stated that "[a]ny opinions formed for or against a party by reason of the evidence and observed conduct before a judge in a judicial proceeding, and the judge's expressions of such opinions, however vigorous, are not the personal 'bias and prejudice' required to disqualify a judge under the statute." *Mirra v. United States,* 379 F.2d 782, 787–88 (2d Cir.), *cert. denied,* 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967). This court is cognizant of the Second Circuit's dictum that "to establish the extrajudicial source of bias and prejudice would often be difficult or impossible and this is not required. Comments and rulings by a judge during the trial of a case may well be relevant to the question of the existence of prejudice." *Wolfson v. Palmieri,* 396 F.2d 121, 124 (2d Cir. 1968) (per curiam). If read broadly, however, this dictum would appear to undermine the Supreme Court holdings in *American Steel Barrel, supra,* and *Grinnell, supra,* as well as the Second Circuit's holding in *Mirra* and the holdings of other courts of appeals.[6] This court understands *Wolfson* to mean that comments and rulings by a judge may be considered as some evidence of bias or prejudice only if it is made explicit in such comments and rulings themselves that the bias or prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case. It is only in this sense that judicial comments and rulings "may well be relevant" to showing extrajudicial bias or prejudice.

IBM has made no showing from the court's "comments and rulings" or otherwise that the adverse rulings it complains of had their source in extrajudicial, or personal, bias. Nor has it demonstrated "that the alleged 'bias or prejudice' predates the initiation of this proceeding." *Duplan Corp. v. Deering Milliken, Inc.,* 400 F.Supp. 497, 521 (D.S.C.1975). It offers merely judicial acts and statements, and a conclusory statement that the court's "bias and prejudice could not have come from any source other than an extrajudicial source." IBM Aff. ¶ 4. Just as in *United States v. Mitchell,* 377 F.Supp. 1312, 1320 (D.D.C.1974), "[e]very action, decision and comment of the court cited by defendant[ ] arose in the course of official judicial activity."

The court finds IBM's allegations with regard to adverse rulings legally insufficient to establish "personal bias or prejudice" within the meaning of section 144.

The second category of conduct by the court which IBM challenges is the allegedly hostile treatment of IBM's witnesses, compared to the allegedly protective treatment of plaintiff's witnesses. IBM alleges that the court has interrupted testimony of its 19 witnesses over 1200 times and asked them almost 5,000 questions, or 36% of all questions they were asked during direct testimony, Joint Aff. at 19; and that the court's "treatment of IBM's witnesses has been marked by frequent hostile and often insulting comments," Joint Aff. at 21. The

---

6. *See, e. g., Pfizer, Inc. v. Lord,* 456 F.2d 532, 542 (8th Cir.) (per curiam), *cert. denied,* 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972); *Davis v. Cities Service Oil Co.,* 420 F.2d 1278, 1282 (10th Cir. 1970); *In re Union Leader Corp.,* 292 F.2d 381, 388–89 (1st Cir.), *cert. denied,* 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); *Tucker v. Kerner,* 186 F.2d 79, 84 (7th Cir. 1950); *Whitaker v. McLean,* 73 App. D.C. 259, 118 F.2d 596 (D.C.Cir. 1941) (per curiam); *Ryan v. United States,* 99 F.2d 864 (8th Cir. 1938), *cert. denied,* 306 U.S. 635, 59 S.Ct. 484, 83 L.Ed.2d 1037 (1939).

nine affidavits signed by IBM witnesses mention hostile questions, interruptions, glares and scowls[7] by the court, and the witnesses' opinions that this court is biased or that IBM cannot receive a fair trial.[8] Appendix 9 to the Joint Affidavit describes the court's questioning, interruptions, and comments on the credibility of 14 IBM witnesses. Appendix 8, by contrast, cites numerous instances in which the court told government witnesses that they need not answer any questions that were ambiguous or misleading or that they didn't understand.

 Even if IBM's allegations with respect to the court's treatment of witnesses were true, the court finds them legally insufficient to support a claim of bias. First, the court is duty bound to protect all witnesses from misleading and ambiguous questions; this practice furthers the court's interest in hearing true and meaningful answers from a witness. Words of caution to a witness indicate nothing more than the court's solicitude for its own ultimate fact finding labors. Indeed, the court has often inquired of defendant's witnesses whether they understood a question when counsel for either party has objected to the form or vagueness of the question. Second, the questioning of witnesses by the court is a practice permitted in both jury and nonjury trials under Rule 614 of the Federal Rules of Evidence and prior to the enactment of the Federal Rules. As Judge Clark stated: "[a trial judge] enjoys the prerogative, rising often to the standard of a duty, of eliciting those facts he deems necessary to the clear presentation of the issues." *United States v. Brandt*, 196 F.2d 653, 655 (2d Cir. 1952) (citation omitted). *See also United States v. Marzano*, 149 F.2d 923, 925 (2d Cir. 1945) (L. Hand, J.) ("A judge is more

than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert."); *Bradley v. School Board*, 324 F.Supp. 439, 445 (E.D.Va.1971), *rev'd on other grounds*, 462 F.2d 1058 (4th Cir. 1972) ("Indeed, the Courts often have a duty to raise matters sua sponte when evidence indicates that equity and justice require a law suit to take a particular turn. . . . Normally these steps would not be construed as an indication of bias or prejudice on the part of the presiding judge for the reason that they are usually taken on the basis of information by the judge in the courtroom where it is the judge's duty to form opinions."). Moreover, the Second Circuit has held that a judge's aggressive questioning of a witness in a jury trial was not a ground for disqualification under section 144. *United States v. Berardelli*, 565 F.2d 24, 30 (2d Cir. 1977). There is even less reason for disqualification in a nonjury trial. IBM has made no showing that the court's treatment of witnesses stems from an extrajudicial source rather than from its duty to protect the record from distortion and obfuscation.

 IBM's transcript citations to the court's occasional findings and comments on witnesses' credibility *vel non* do not establish any personal, extrajudicial bias. It is the "duty" of a judge in a nonjury trial "to appraise the testimony and demeanor of the witnesses." *United States v. Diapulse Corp.*, 457 F.2d 25, 30 (2d Cir. 1972). In *Diapulse, supra* at 30, the Second Circuit held that a district judge's "harsh" assessment of the credibility of a party's witnesses, which was presented in an "abrasive" manner, with "disparaging comments . . . often made directly to the witnesses," did not give rise to a finding of bias or denial of

---

**7.** The court's facial expressions are noted in several affidavits. *See, e. g.*, Richard P. Case aff. ¶ 6; J. Douglass McGrew aff. ¶ 6; Arjay Miller aff. ¶ 6; Thomas A. Spain aff. ¶ 8. The court has been unable to find any discussion in prior case law whether a judge's facial expressions are grounds for disqualification. *Cf. United States v. Weiss*, 491 F.2d 460, 468 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42

L.Ed.2d 59 (1974) (on direct appeal of a jury verdict, the court noted that "the printed record cannot convey the atmosphere, the tones of voice of judge, counsel and parties, and their facial expressions.")

**8.** *See, e. g.*, Abraham J. Briloff aff. ¶ 11; Ernest Slayden Hughes aff. ¶ 6; Cuthbert C. Hurd aff. ¶ 12; Thomas A. Spain aff. ¶ 17.

a fair hearing. Similarly, the Eighth Circuit found no personal bias or prejudice in a judge's questioning a deposition witness in a threatening manner and impugning the witness's veracity. *Pfizer, Inc. v. Lord*, 456 F.2d 532, 538–39 (8th Cir.) (per curiam), *cert. denied*, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972).

IBM's third category of complaints consists of allegations that this court "has demonstrated an antipathy toward IBM counsel that reveals a perception that he is engaged in a struggle with IBM counsel and an attitude that they can do no right." Joint Aff. at 44. Specifically, IBM accuses this court of making disparaging remarks about each IBM lawyer who has examined a witness, of belittling and criticizing objections, motions and arguments made by IBM counsel, and of threatening IBM counsel with future reprisals. Joint Aff. at 44. Appendix 10 to the Joint Affidavit contains a 5½ page list of transcript citations, in which IBM claims the court has directed antipathetic language at IBM counsel. In addition, the appendix recounts a few instances in which the court's allegedly antipathetic remarks were made, or subsequently taken, off the record.

■ Antipathy to an attorney is insufficient grounds for disqualification under section 144, because it is not indicative of extrajudicial bias against a "party." *Davis v. Board of School Commissioners*, 517 F.2d 1044, 1050–51 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).[9] *Rosen v. Sugarman*, 357 F.2d 794 (2d Cir. 1966) is not to the contrary. In that case, it was recognized that if antipathy to counsel "has crystallized to a point where the attorney can do no right, the judge will have acquired 'a bent of mind that may prevent or impede impartiality of judgment,' at least in a matter where the attorney's private interests are at stake."

*Id.* at 798. In *Rosen*, counsel filed a section 144 affidavit to disqualify the judge from deciding his application for an allowance in bankruptcy proceedings. Unlike counsel for defendant in the present case, his "private interests" were at stake; indeed, with respect to his application for an allowance, he had become a party. Thus *Rosen* accords entirely with the principle that, to be disqualifying, prejudice must be directed at a party rather than at his attorney. In *Rosen* itself, the refusal of the district court to disqualify itself was upheld, and the court of appeals stated that "[a]n occasional display of irritation, usually regretted as soon as made, does not suffice to show personal bias or prejudice, whether the irritation was justified or not." *Id.* And elsewhere the Second Circuit has observed that:

> Much harm is done by the myth that, merely by putting on a black robe and taking the oath of office as a judge, a man ceases to be human and strips himself of all predilections, becomes a passionless thinking machine.

*In re J. P. Linahan*, 138 F.2d 650, 652–53 (2d Cir. 1943) (footnotes omitted).

■ A handful of pages of quotations, selectively ripped from their context of over 90,000 pages of trial transcript and 612 days of a hotly contested trial, are indicative at most of "an occasional display of irritation," and "[do] not suffice to show personal bias or prejudice," *Rosen, supra* at 798. *See also United States v. Weiss*, 491 F.2d 460, 467–69 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974). Section 144 could not have been intended by Congress to turn all judges into "passionless thinking machine[s]." As Justice McReynolds stated, "while 'An overspeaking judge is no well-tuned cymbal' neither is an amorphous dummy unspotted by human emotions a becoming receptacle for judicial power." *Berger v. Unites States*, 255 U.S. 22, 43, 41

9. Similarly, *Davis* held that bias against counsel was not grounds for disqualification under section 455 as amended. The Tenth Circuit has taken a somewhat tempered view of amended section 455 in *United States v. Ritter*, 540 F.2d 459, 462 (10th Cir.), *cert. denied*, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976). ("Thus, if a judge is biased in favor of an attorney, his impartiality might reasonably be questioned in relationship to the party."). In *Ritter*, the court of appeals found that allegations of the trial judge's animus toward counsel were insufficient for disqualification.

S.Ct. 230, 236, 65 L.Ed. 481 (1921) (dissent). Assuming for purposes of this Memorandum only that the court's comments were unjustified, they were prompted by a judicial opinion of counsels' conduct, and do not serve as evidence of extrajudicial bias or prejudice. *See United States v. 16,000 Acres of Land*, 49 F.Supp. 645, 654 (D.Kan. 1942).

The fourth category of IBM's allegations consists of actions by the court that IBM claims "create a record in this case that cannot be subjected to full and adequate appellate review." Joint Aff. at 45. In this category IBM has repeated allegations made elsewhere in its affidavits of inconsistent procedural and evidentiary rulings and of interruptions and interrogation of IBM witnesses. The court has already discussed these allegations and will not deal with them again. IBM also makes the following allegations: that the court has refused to file certain papers submitted by IBM after a court of appeals mandate said to require such filing; that the court "has refused to rule in a timely manner, and in some cases, to rule at all on matters of importance to IBM"; that the court "has deliberately prevented IBM from obtaining immediate appellate review of his rulings on attorney-client and work product privilege"; and that the court "has secretly made alterations to and deletions from the trial transcript" involving "expressions by the Chief Judge of his antipathy toward IBM counsel." Joint Aff. at 46.

■■■■ The claim that this court has refused to file papers submitted by IBM, in the face of a mandate of the Second Circuit, *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 46 (2d Cir. 1975), is untimely. It comes almost four years after the date of the earliest papers in question and two years after the date of the most recent. More importantly, this belated effort to question the court's compliance with the mandate does not raise a question of personal bias or prejudice. This court does not read the court of appeals mandate to abrogate all local and individual court rules governing the submission of papers.[10] Thus, several unfilable papers submitted by IBM and now discussed in the affidavit were not filed.[11] On one occasion, this court rejected papers that failed to conform to the court's rules; instead, the court gave IBM leave to submit appropriate response papers within three days.[12] IBM did in fact submit appropriate papers, which were filed with the Clerk of the Court.[13] This court's insistence that the parties adhere to its rules is in no way evidence of extrajudicial bias or prejudice. Additionally, the claim of bias and prejudice is belied by the court's refusal to file defective papers submitted by the plaintiff as well.[14] Most assuredly this court did not intend to ignore or contravene the court of appeals mandate.

**10.** Motion practice in the Southern District of New York is governed by the individual rules of each judge, as well as by the local and federal rules. The individual rules, which vary from judge to judge, are published every Tuesday in the *New York Law Journal*.

**11.** Within this category were orders to show cause to vacate the court's orders relating to witness interviews, submitted by IBM on September 23 and September 25, 1975. The court refused to sign the orders and returned them to IBM, in accordance with standard procedure not to file unsigned orders to show cause. These papers were submitted before the court of appeals mandate.

Also, the court refused to file affidavits submitted by IBM after the mandate to support a claim of privilege which, the court had earlier ruled, had been waived. Tr. 16517. The affidavits sought to relitigate matters already decided by the court, and no procedural rule can be found to justify filing the affidavits, which attempted to establish an evidentiary basis for the privilege claim, on the docket. (IBM counsel had earlier attempted unsuccessfully to have the affidavits marked for identification as exhibits at trial, tr. 16480).

**12.** Tr. 53694. The court declared that it would not accept for filing papers that contained portions of the uncorrected transcript, and that counsel should instead cite to the pages referenced.

**13.** Docket entries 3522–24.

**14.** The court rejected the government's Motion for Reimbursement Pursuant to Rule 37, first submitted December 5, 1977, and it gave the government leave to resubmit appropriate papers. The defect in plaintiff's papers was the same as that identified in defendant's papers discussed at note 11 *supra*: the inclusion of uncorrected transcript quotations.

Upon reviewing IBM's affidavit, it did become apparent that three submissions should have been filed but were not, due to oversight by the court.[15] Such oversight, however, does not evidence an attempt to preclude IBM from making its record. If IBM believed the court's actions contravened the court of appeals mandate or were an abuse of discretion, IBM could have brought on another petition before the court of appeals. That this was not done is significant. To add this point to a disqualification affidavit is nonsupportive. Even if this court erred, an incorrect interpretation of a higher court's ruling does not tend to show personal bias or prejudice. *Fleischer v. A.A.P. Inc.*, 180 F.Supp. 717, 720 (S.D.N. Y.1959) (citing cases).

15. This category includes IBM's reply papers submitted on April 7, 1975, and a Supplemental Stipulation dated January 10, 1977. These papers are related and the circumstances in which they were submitted must be recounted to a greater extent than IBM has done in its present affidavit.

On March 21, 1975, IBM moved this court for an order requiring the government to respond to requests for admissions. The government's answer of March 31, 1975 contained allegations that could be construed as charging counsel for IBM with misrepresentations respecting a stipulation dated February 7, 1975. That stipulation assertedly had been entered into to govern plaintiff's responses to requests for admission. IBM sought leave to file reply papers. Indeed, its reply papers were submitted with its application to file. That reply charged that portions of plaintiff's counsel's affidavits in opposition to the April 7 motion contained "demonstrably false" accusations as to the conduct of IBM counsel. This court refused to file the reply papers, and filed an opinion on April 21, 1975 explaining that "the resolution of [the March 21, 1975] motion depends not on negotiations between the parties but rather on the obligations imposed by Rule 36." 66 F.R.D. 383 at 385. Therefore, the government's answer did not raise a material new issue to which a reply by IBM was appropriate. The court indicated that the misconduct allegations raised a collateral issue to be dealt with in a separate proceeding.

Several months later the court of appeals issued the mandate discussed in text, and specifically stated "we see no reason why IBM's [reply papers respecting misconduct] should not be filed." *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 47 (2d Cir. 1975). The reply papers, which were the subject of a government motion to seal in this court and the court of appeals, were held in chambers.

Thereafter, this court sought to bring the parties together to resolve the misconduct charges and countercharges without holding a hearing. A stipulation of *mutual* retraction was proposed and discussed. *See* robing room conferences of June 21, 1976 (tr. 20321–20327); Sept. 1, 1976 (tr. 24955); Sept. 13, 1976 (tr. 25203–25211). A proposed stipulation dated October 31, 1976, by which both parties in effect withdrew allegations of misconduct, was presented to chambers. This court suggested modifications, and on January 3, 1977 expressed an intent to sign and file a Supplemental Stipulation incorporating the court's amendments, and to file the unsigned stipulation of October 31, 1976. The Supplemental Stipulation was executed by the parties and returned to chambers for filing on January 11, 1977. It provided in part that, 30 days after the court filed the stipulations, IBM could resubmit its motion originally filed on March 21, 1975. It now appears the stipulations were not filed as they have not been entered on the docket, and the original of the Supplemental Stipulation cannot now be found. However, a xerox copy of the Supplemental Stipulation has been found in chambers with a notation by a law clerk indicating that Chief Judge Edelstein had signed the original. The stipulations directed that the various papers containing the misconduct allegations be retained under seal, as this court has done, although it failed to enter such documents on the docket sheet.

It should be noted that, in opposition to a recent government motion to enforce a subpoena against IBM witness Arthur G. Anderson, IBM questioned the bona fides of the government's rejection, in negotiations, of a proposal to adjourn the subpoena. The government, substantially in the same position as was IBM in the "misconduct" incident related above, sought leave to reply to IBM's answer. The court denied such request, holding as it did in the earlier incident that the conduct of negotiations between the parties was extraneous to the merits of the motion. *See* memorandum of May 24, 1979, at n.1. Because the government did not attach its reply papers to its request to reply, denial of the request left the government in the same position as was IBM with respect to its unfiled "misconduct" reply papers: its reply is not in the record.

In an unrelated incident, the court had refused to file IBM papers submitted prior to the court of appeals mandate. IBM had submitted papers on September 2, 1975 in opposition to plaintiff's motion of August 22, 1975 to enforce a Rule 45 subpoena. The papers were submitted on the return date set for the motion. The court rejected them as out of time. 68 F.R.D. 613 (S.D.N.Y.1975). These papers should have been filed after the mandate.

IBM alleges that the court has not decided matters of importance to it and lists pending motions by the government [16] as well as by IBM. The Federal Rules of Civil Procedure and the local rules of this court do not set time limits for decisions. This court has acted expeditiously on matters before it, given the constraints of time and the priorities demanded by the trial. All pending matters will be dealt with in due course.[17] Necessarily in the course of litigation, particularly protracted litigation, matters cannot always be decided immediately. The need for careful deliberation and the exercise of sound judgment involves an expenditure of time. Courts not infrequently reserve decisions on motions and rulings before, during and after trial both in civil as well as criminal cases. Indeed, matters of the gravest import to the litigants may be reserved until the court's final opinion on the merits. Even accepting IBM's selective summary of motion practice before this court as true (see note 5 supra), it is also true the undecided matters are far outnumbered by those disposed of. It bears repetition that this court has issued 66 opinions and 137 memorandum endorsements. Given the dimmest view of the court's motion practice as complained of by IBM, there can be no doubt that the court acted within the confines of the courtroom in the conduct of the trial and was not guided or motivated by extrajudicial bias or prejudice. On the contrary, it is conclusive that the court's action was in exercise of its sound judicial discretion.

IBM also complains of the court's refusal to certify rulings to the court of appeals or otherwise permit appellate review on the merits:

> He would not certify his privilege rulings under 28 U.S.C. § 1292(b) to facilitate immediate appellate consideration; he would not permit IBM counsel to intervene, even where the protection of their own work product was at issue; he would not hold IBM in criminal contempt of a production order which would have permitted an immediate appeal, but instead held IBM in civil contempt knowing that such an order was not appealable as an interlocutory matter. . . .

Joint Aff., Appendix 11 at 3. However, as the court of appeals noted, certification by the district court of nonfinal decisions, pursuant to 28 U.S.C. § 1292(b), was not permitted in civil antitrust actions brought by the United States under the version of the Expediting Act then in effect, 15 U.S.C. § 29 (1970) [18]; *International Business Machines Corp. v. United States*, 480 F.2d 293, 295–97 (2d Cir. 1973) (en banc), *cert. denied*, 416 U.S. 979, 94 S.Ct. 2413, 40 L.Ed.2d 776, 416 U.S. 980, 94 S.Ct. 2413, 40 L.Ed.2d 777 (1974), (citing *Tidewater Oil Co. v. United*

16. *E. g.*, plaintiff's motion of December 9, 1977, pursuant to Rule 37 and Special Master Order One. The motion would have the court find that defendant has abused the discovery process and order all costs of the special master proceedings assessed against it. *See also* plaintiff's motion of January 17, 1979, for an order directing and governing production of documents preparatory to consideration of relief. Presumably these motions are "of importance" to the government.

17. It is of interest that IBM lists as a pending motion plaintiff's motion of January 17, 1979 for an order directing and governing production of documents preparatory to consideration of relief. *See* Joint Aff., Appendix 26 at 11. Yet when the court sought to schedule oral argument on that motion, defendant's counsel requested an adjournment:

> THE COURT: Well I want to think about this. I was also going to raise today the matter of scheduling, argument on the relief motion. I have been carefully studying the papers, and I think the argument might be useful.
> Would your application for adjournment also include that?
> MR. BARR: Yes, sir.

Tr. 90346. The above quoted exchange occurred during a robing room conference in which IBM counsel requested a 10 day adjournment to consider IBM's alternatives in response to the court's memorandum and order of June 25, 1979 (enforcing subpoena on Frank T. Cary). The adjournment was granted and at the end of that period IBM filed its affidavit of bias and prejudice.

18. The present version of the Expediting Act, 15 U.S.C. § 29(a), as amended effective Dec. 21, 1974 by Pub.L.No. 93–528 § 5, 88 Stat. 1709, is even more explicit in its prohibition of such appeals.

*States*, 409 U.S. 151, 173–74, 93 S.Ct. 408, 34 L.Ed.2d 375 (1972)). Moreover, this court's statement six years ago, when IBM first litigated this issue, remains of equal force today:

Absent a formal certification under 28 U.S.C. § 1292(b), it is not proper for the district court to enter an order which is designed to either thwart or promote an interlocutory appeal. The decision as to the appealability of an order of the district court is a matter properly to be decided by the court of appeals. The district court can, and should, do no more than frame an order which it believes to be proper in the circumstances of the case before it. Thus, this court rejects IBM's assertion that it should consider the question of appealability in shaping its contempt order.

*United States v. International Business Machines Corp.*, 60 F.R.D. 658, 666 (S.D.N.Y.), *appeal dismissed and petition denied*, 493 F.2d 112 (2d Cir. 1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). The court's fashioning of an order proper in the circumstances, without regard to the appealability of that order, does not establish personal bias and prejudice under 28 U.S.C. § 144.

 IBM also contends that the court "has secretly made alterations to and deletions from the trial transcript." Joint Aff. at 46. IBM describes six incidents over a four-year period where it claims that remarks recorded by the court reporter were altered or omitted from the record. Joint Aff., Appendix 10 at 15–27. In the most recent event described by IBM, the court stated on April 3, 1979 that an IBM lawyer's comments had the effect of cueing a witness. In place of the court's words "cue" and "cued," the uncorrected trial transcript erroneously contained the words "confuse" and "confused." One week later, IBM made a formal written motion to the court, supported by seven affidavits, for an order correcting the transcript. In the ordinary course, the court submitted an errata sheet to the court reporters for that day's transcript, and after the court reporter had compared the errata to his stenographic

notes, the transcript was corrected to contain the words "cue" and "cued" in place of "confuse" and "confused" (Tr. 90018). IBM now asserts: "We have no information explaining how the change came to be made. Neither party filed any errata dealing with the subject. The Court has issued no order." Joint Aff., Appendix 10 at 27.

What is IBM's complaint? Is it the fact that the correction was made at all? Or that the correction was made "secretly?" Or that the court has never issued a formal ruling on IBM's now moot motion? The court finds no personal bias or prejudice against IBM with respect to the corrections made in the transcript, nor does the court find it created an unreviewable record.

The only other incident described by IBM that has occurred in the past year involved a robing room conference on March 15, 1979. At that conference, confusing statements were made concerning an order protecting confidential information, and the court issued tentative instructions concerning a deposition. The court then suggested that the parties do nothing further until the court had a chance to examine the transcript (tr. 89475–19). To avoid confusion of the record, the court ordered the transcript of the conference taken off the record. The court's instructions concerning the deposition were later superseded by its written orders of April 17, 1979. After IBM made a formal written motion to restore the robing room transcript to the record, the court did restore it. The court finds no personal bias or prejudice in its action taking the conference off the record or by the subsequent restoration of the conference to the record.

The remaining four incidents occurred between May 23, 1975 (the fifth day of trial) and July 14, 1978. IBM alleges that in each instance, the court directed pejorative remarks at IBM counsel then later removed them from the record. IBM has pointed to other remarks remaining in the record that IBM has construed to the same effect. *See* Joint Aff., Appendix 10 at 4–9. The court finds no showing of personal bias or prejudice in these four actions, nor does the court

find that they create an unreviewable record.

In summary, for each act creating an allegedly unreviewable record, IBM has ascribed prejudice and bias to actions of the court that were taken entirely for judicial reasons and that do not support an inference of prejudice and bias.

### 28 U.S.C. § 455

Turning to section 455, the court must decide whether the 1974 amendment applies to IBM's affidavit seeking the court's recusal. Section 3 of the amending Act provides:

> This Act shall not apply to the trial of any proceeding commenced prior to the date of this Act [December 5, 1974], nor to appellate review of any proceeding which was fully submitted to the reviewing court prior to the date of this Act.

Public Law 93–512, § 3, 88 Stat. 1609 (1974). This proceeding [19] commenced in January 1969, prior to the effective date of the amending Act, and the trial commenced in May 1975, after the Act's effective date. The effective date provision is unambiguous. *In re Virginia Electric and Power Co.*, 539 F.2d 357, 366 (4th Cir. 1976). Where the proceeding commenced before and the trial commenced after the Act's effective date, the date of the proceeding is determinative and the pre-1974 statute applies. *See National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 n. 9 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979); *In re Continental Vending Machine Corp.*, 543 F.2d 986, 995 n. 4 (2d Cir. 1976); *In re Virginia Electric and Power Co.*, 539 F.2d 357, 361–62, 366 (4th Cir. 1976); *Bradley v. Milliken*, 426 F.Supp. 929, 932 (E.D.Mich.1977); *Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497, 505 (D.S.C.1975).[20]

IBM raises as grounds for disqualification actions that occurred in the period from 1972 through 1974. It is not appropriate for the court to measure those early actions in light of a subsequently imposed standard for disqualification; nor is it appropriate for the court to apply one standard to its early actions and a different standard to its later actions in the same proceeding. Therefore, the court finds that the pre-1974 section 455, set forth at footnote 2 *supra*, is applicable to all the allegations in IBM's affidavits.

This provision sets up a test for disqualification even less favorable to IBM than that imposed by section 144. The language of the provision requiring disqualification of a judge "so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit . . . ." points even more clearly than does section 144 to the need to demonstrate extrajudicial bias. *See Peckham v. Ronrico Corp.*, 288 F.2d 841, 842 n. 2 (1st Cir. 1961). For this reason,

> [i]t has been well recognized that, if recusal is not warranted under 28 U.S.C. § 144, it is not required under the pre-1974 28 U.S.C. § 455 absent a showing that the trial judge either had a substantial pecuniary interest in the case or that he was a material witness thereto.

*Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497, 505 (D.S.C.1975). The court has no pecuniary interest in nor is it a material witness in this case. All that has been said above with respect to section 144 applies *a fortiori* here. As discussed above, IBM's lengthy but selective recapitulation of the record in this case does nothing to support even the very slimmest suggestion of extrajudicial bias.

Moreover, under pre-1974 section 455 "a federal judge has a duty to sit where not disqualified which is equally as strong as

---

**19.** 28 U.S.C. § 455(d)(1) as amended defines proceeding as follows: " 'proceeding' includes pretrial, trial, appellate review, or other stages of litigation."

**20.** In *Samuel v. University of Pittsburgh*, 395 F.Supp. 1275, 1277 (W.D.Pa.), *vacated on other*

grounds, 538 F.2d 991 (3d Cir. 1975), the court found the pre-1974 section 455 applicable, but proceeded to consider the amended statute because of its more liberal provisions. This court also will consider the amended statute, at pages 1389–1390 *infra*.

the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837, 93 S.Ct. 7, 15, 34 L.Ed.2d 50 (1972) (Memorandum of Rehnquist, J., denying motion for his disqualification) (emphasis omitted); *see In re Union Leader Corp.*, 292 F.2d 381, 391 (1st Cir.), *cert. denied*, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). *United States v. Mitchell*, 377 F.Supp. 1312, 1325–26 (D.D.C. 1974). As the Second Circuit has stated, the duty to sit is "especially strong . . . where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience." *Rosen v. Sugarman*, 357 F.2d 794, 798 (2d Cir. 1966). *Rosen* involved a bankruptcy proceeding that had been pending in the district court for over 12 years and before the same judge almost since its inception. *Id.* at 795. The *IBM* case has been before the same judge for over seven years, and has been in trial for four years. The obligation to continue presiding over it weighs especially heavily against disqualification.

■ The court will not disqualify itself pursuant to section 455 for all the reasons stated above.

The court would reach the same result under section 455 as amended. Section 455(b)(1) uses the same language as section 144—"personal bias or prejudice"—and the two sections have been read *in pari materia*. *See United States v. Wolfson*, 558 F.2d 59, 62 (2d Cir. 1977); Wright, Miller & Cooper, Federal Practice and Procedure § 3542 at 345–46 (1975).

■ Section 455(a) creates a broader standard for disqualification in two respects. First, it eliminates the duty to sit.[21] Second, it sets up an objective standard of disqualification—"in [a] proceeding in which his [the judge's] impartiality might reasonably be questioned"—in place of the earlier version's subjective standard set forth in the phrase "in his [the judge's] opinion." H.R.Rep.No. 93–1453, 93d Cong.,

2d Sess. 4–5, *reprinted in* 3 [1974] U.S. Code Cong. & Admin.News, pp. 6351, 6354–55. The test under this objective standard is "whether facts have been presented that, assuming their truth, would lead a reasonable person to infer that bias or prejudice existed, thereby foreclosing impartiality of judgment." *United States v. Corr*, 434 F.Supp. 408, 412–13 (S.D.N.Y.1977) (citation omitted).

The Second Circuit has recognized that amended section 455(a) creates " 'a greater flexibility in determining whether disqualification is warranted in particular situations.' " *United States v. Wolfson*, 558 F.2d at 63, (quoting *United States v. Ritter*, 540 F.2d 459, 462 (10th Cir.), *cert. denied*, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976)). Yet the amendment of section 455 does not alter the absolute requirement that bias or prejudice be extrajudicial to disqualify a judge. As was explained in *Davis v. Board of School Commissioners*, 517 F.2d 1044, 1052 (5th Cir. 1975), a disqualification motion should be decided "on the basis of conduct extra-judicial in nature as distinguished from conduct within a judicial context. This means that we give §§ 144 and [amended] 455 the same meaning legally for these purposes, whether for purposes of bias and prejudice or when the impartiality of the judge might reasonably be questioned." In particular, past adverse rulings and a litigant's fear of future adverse rulings remain insufficient to oust a judge from a case. *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). Otherwise, amended section 455(a) might launch dissatisfied litigants throughout the country on unlimited judge-shopping sprees. *See Lazofsky v. Sommerset Bus Co.*, 389 F.Supp. 1041, 1044–45 (E.D.N.Y.1975). As the House Judiciary Committee reported:

in assessing the reasonableness of a challenge to his impartiality, each judge must

---

21. One of the main purposes of the 1974 amendment of section 455 was to eliminate the concept of a duty to sit. H.R.Rep.No. 93–1453, 93d Cong., 2d Sess. 5, *reprinted* in 3 [1974] U.S. Code Cong. & Admin.News, 6351, 6355. *See United States v. Wolfson*, 558 F.2d 59, 63 (2d Cir. 1977).

be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial. Litigants ought not to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

H.R.Rep.No. 93–1453, 93d Cong., 2d Sess. 5, *reprinted in* 3 [1974] U.S. Code Cong. & Admin.News, pp. 6351, 6355.[22]

▮ Aside from adverse rulings, IBM's allegations comprise three other categories of judicial actions: questioning and interruptions of witnesses, antipathetic remarks directed at counsel, and frustration of IBM's attempts to create a record for appellate review. Even viewed under the provisions of amended section 455, these charges refer to judicial acts no less than does IBM's extensive recapitulation of motions and objections decided by the court. None of these categories points to any extrajudicial source for the alleged bias.

### IBM's Due Process Claim

▮ When a litigant seeks to disqualify a judge in the course of a proceeding, as is the case here, it is the statutory recusal provisions, 28 U.S.C. §§ 144, 455, which give life to the due process requirement of a "fair trial [before] a fair tribunal . . . ." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

A claim of bias and prejudice that survives rigid scrutiny under sections 144 and 455—where the facts alleged must be accepted as true—will necessarily pass constitutional muster as well. *See United States v. Haldeman*, 181 U.S.App.D.C. 254, 353 n. 276, 559 F.2d 31, 130 n. 276 (D.C.Cir.1976) (en banc) (per curiam) ("Since in our view anything impinging on [due process] would have more readily violated § 144 or § 455, we do not consider the constitutional implications *per se*."), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). *Accord, United States v. Conforte*, 457 F.Supp. 641, 659 n. 13 (D.Nev.1978). The court's conclusion *supra* that IBM's affidavit demonstrates neither . bias nor prejudice is therefore a sufficient response to IBM's due process claim as well.

### Conclusion

Whether examined individually or in the aggregate,[23] IBM's allegations demonstrate no personal extrajudicial bias or prejudice on the part of this court. Judge Sirica's characterization of defendants' motion for disqualification in *United States v. Mitchell* is equally apt here: "[Defendant's] best effort consists of alleging a battery of facts from which it is hoped one [w]ould infer some bias favorable to the prosecution. Even, then, however, defendants have cited nothing to suggest that any such bias, which the court assures them does not exist, is personal." 377 F.Supp. at 1323. IBM's affidavit of bias and prejudice consists *entirely* of judicial actions taken within the four corners of the courtroom in the course of this proceeding. Those judicial actions, whether ultimately upheld on appellate re-

---

**22.** Just as amended § 455 does not authorize a party to oust a judge on the basis of adverse rulings, it does not permit a judge to disqualify himself solely because a case may appear toilsome or controversial. This court is heedful of the admonition that "the new test [of amended § 455(a)] should not be used by judges to avoid sitting on difficult or controversial cases." H.R.Rep.No. 93–1453, 93d Cong., 2d Sess. 5, *reprinted in* 3 [1974] U.S. Code Cong. & Admin. News, pp. 6351, 6355.

**23.** Given the court's findings *supra* of legal insufficiency with regard to IBM's *specific* allegations, IBM's allegations taken as a whole and viewed in a cumulative light must fail as well. *United States v. Valenti*, 120 F.Supp. 80, 88 (D.N.J.1954) ("As indicated above, none of the items of the said affidavit are, in the opinion of the court, sufficient legally to sustain the affidavit; and as it is axiomatic, that a whole can be no greater than its component parts, it must fail on this ground also and be stricken").

view or not, form no conceivable basis for IBM's present conclusion that the court possesses a bias and prejudice that "could not have come from any source other than an extrajudicial source." IBM Aff. ¶ 4. This court has no interest in the outcome of this case other than the interest of every judicial officer that the truth be discovered and the law correctly applied. IBM identifies no personal prejudice and bias on the part of this court because none exists.

Accordingly, IBM's request that this court disqualify itself pursuant to 28 U.S.C. §§ 144 and 455 and the fifth amendment to the United States Constitution is denied.

So ordered.