George **LAMBORN**, Henry Maringer, Lamar Commodities, a partnership, Plaintiffs,

v.

Thomas H. **DITTMER** and Dittmer International, Inc., Defendants.

No. 83 Civ. 2493 (RLC).

United States District Court, S.D. New York.

Dec. 8, 1989.

Curtis, Mallet–Prevost, Colt & Mosle, New York City (T. Barry Kingham, Louis A. Craco, Jr., of counsel), for plaintiffs.

Graubard, Mollen, Horowitz, Pomeranz & Shapiro, New York City (Jack Weinberg, Marianne Bretton–Granatoor, Therese M. Doherty, of counsel), Schiff, Hardin & Waite, Chicago, Ill. (Susan R. Lichtenstein, of counsel), for defendants.

ROBERT L. CARTER, District Judge.

At the initial trial in this case, the jury

found that defendant[1] wrongfully terminated the partnership he had with plaintiffs and awarded plaintiffs $30,091,341.21. On appeal, the Second Circuit reversed and remanded for a new trial. *Lamborn v. Dittmer*, 873 F.2d 522 (2d Cir.1989).

Defendant contends that I harbor a bias against him and therefore must recuse myself under 28 U.S.C. §§ 144, 455(b)(1), and 455(a) from presiding at retrial. In support of this contention, defendant claims, in essence, that my demeanor during closing arguments, my evidentiary rulings, my supervision of trial testimony and my postponement of the trial show bias sufficient to require recusal. Plaintiffs move for Rule 11 sanctions against defendant and his counsel based on this recusal motion alleging that it is frivolous, and designed to harass them and increase their costs of litigation.

In a separate motion, plaintiffs move to vacate the taxation of costs imposed by the district court clerk in connection with the appeal. Plaintiffs contend that defendant is not entitled to costs and, in any event, the court should exercise discretion to avoid awarding any costs until after completion of the new trial. If costs are awarded now, plaintiffs argue that at least defendant should be denied the costs of the premium for the new trial bond and the commissions for the letters of credit. Additionally, plaintiffs move for Rule 11 sanctions against defendant and his counsel based on the representation that plaintiffs knew that letters of credit were being used as collateral and the costs involved. Defendant cross-moves for Rule 11 sanctions against plaintiffs and their counsel alleging that they have misrepresented the record in making their Rule 11 motion regarding the letters of credit.

### Facts

The relevant background of this case is summarized in *Lamborn v. Dittmer, supra*, and familiarity with that opinion is presumed. A brief sketch of the facts is set out below to aid in understanding the instant determination.

In December, 1981, plaintiffs and defendant entered into a partnership to form an international commodities sales business, which was dissolved by defendant in March, 1983. In their complaint, plaintiffs alleged that defendant dissolved the partnership in violation of his fiduciary duty and in contravention of the partnership agreement so that he could obtain the partnership's customers, goodwill, employees, and other assets for his own benefit. Defendant argued that under the partnership agreement he had a right to dissolve the partnership, and counterclaimed against plaintiffs for money the partnership had lost in the course of its business. The jury found for plaintiffs and awarded them approximately $30 million which represented one-half of the fair market value of the partnership at the time of trial.

The jury verdict was entered as judgment, and defendant filed a motion for a new trial and sought a stay of execution. Although defendant requested that the stay be granted without having to post a bond, plaintiffs objected and the court ordered that defendant post a $20 million bond as a condition of granting the stay. This bond was obtained from Fidelity & Deposit Company of Maryland only after defendant posted with them a letter of credit in the full amount of the bond. Subsequently, defendant's new trial motion was denied.

Defendant appealed and sought a stay of enforcement pending appeal, again requesting that the stay be granted without the posting of a bond. Plaintiffs again opposed this request and the court ordered that defendant post a supersedeas bond in the amount of $33.5 million pursuant to Rule 62(d), F.R.Civ.P. and Local Civil Rule 41. This bond was obtained from Continental Casualty Company which required defendant to post a letter of credit in the full amount of the bond.

On appeal, the Second Circuit ordered that costs of the appeal be assessed against

---

1. Although both Thomas H. Dittmer and Dittmer International, Inc. ("DI"), were named in the complaint, DI has since dissolved and the proceeds have gone to Dittmer.

plaintiffs. The Second Circuit taxed $12,-145.99 of costs, an amount which has been paid and is not in dispute.[2] The district court clerk taxed additional costs totaling $637,107.71 in the following amounts:

| | |
|---|---:|
| Premium for supersedeas bond | $ 71,063.00 |
| Commissions for letter of credit as collateral for supersedeas bond | 337,791.67 |
| Transcript | 5,438.42 |
| Docket Fees | 105.00 |
| Transmission of Record | 452.17 |
| Premium for new trial bond | 52,813.00 |
| Commission for letter of credit as collateral for new trial bond | 169,444.45 |
| TOTAL | 637,107.71 |

Plaintiffs have not paid any portion of the district court clerk's taxation of costs.

### *Discussion*

### I.

Section 144 provides for disqualification "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice ... against him." Section 455(b)(1) provides that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party." Section 144 and § 455(b)(1) are construed *in pari materia. Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326, 333 (2d Cir. 1987). Sec. 455(a) is broader than the above sections, requiring a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."

▮ Consideration of a motion for recusal is committed to the sound discretion of the district court, *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988), *cert. denied sub nom. Milken v. S.E.C.*, — U.S. ——, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989), and there is a substantial burden on the moving party to show that the judge is not impartial. *United States v. International Business Machines*, 475 F.Supp. 1372, 1379 (S.D.N.Y.

1979) (Edelstein, C.J.), *aff'd*, 618 F.2d 923 (2d Cir.1980). "A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation," *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987), and has as much of an obligation "not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert, supra*, 861 F.2d at 1312.

### A.

▮ Affidavits filed under § 144 are strictly scrutinized for form and timeliness, *United States v. Womack*, 454 F.2d 1337, 1341 (5th Cir.1972), *cert. denied*, 414 U.S. 1025, 94 S.Ct. 450, 38 L.Ed.2d 316 (1973), and therefore before reaching the merits of the recusal motion, it is necessary to determine whether these procedural requirements have been met. Although the Second Circuit has not yet decided whether an affidavit is required to bring a motion for recusal under § 455, when one is offered it will be subject to the same scrutiny as an affidavit offered under § 144. *Apple v. Jewish Hosp. and Medical Center, supra*, 829 F.2d at 333.

▮ While § 144's mandate that the affidavit be filed "not less than ten days before the beginning of the term" is no longer interpreted literally as courts now sit continually, it still applies and is now generally construed to mean that the motion should be made at the earliest possible moment after obtaining facts demonstrating a basis for recusal. *Id.* at 333. Defendant's motion comes over two years after the date of the original trial in which the alleged prejudicial conduct occurred and therefore is presumptively untimely.

▮ In addition to lapse of time, four other factors are taken into account in considering the timeliness of a motion: 1) whether the movant has participated in a substantial manner in trial or pre-trial proceedings, 2) whether granting the motion would represent a waste of judicial resources, 3) whether the motion was made

---

**2.** This amount includes costs for the docketing fee, typesetting and reproduction of the brief and the reply brief, and reproduction of the exhibit volume, the joint appendix, the transcript volume and the out-of-state cases volume.

after the entry of judgment, and 4) whether the movant can demonstrate good cause for delay. *Id.* at 334. The underlying rationale for the timeliness rule is to prevent the waste of judicial resources which would occur if proceedings had to be duplicated after recusal, and to prevent a movant from "hedging [his] bets" by holding back and waiting to see the outcome of his case before making his recusal motion. *Id.* Recusal motions are often denied on the basis of untimeliness when there has been only a short delay. *Id.* (delay of two months); *United States v. Durrani,* 835 F.2d 410, 427 (2d Cir.1987) (delay of four months); *United States v. Daley,* 564 F.2d 645, 651 (2d Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978) (delay of 7 months); *In re Martin–Trigona,* 573 F.Supp. 1237, 1244–45 (D.Conn.1983), *appeal dismissed,* 770 F.2d 157 (2d Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986) (delay of 12 days).

While recusal at this point in time would not result in a waste of judicial resources in this case because a new trial is necessary no matter who presides, defendant's motion is untimely nevertheless because the delay has allowed him to hedge his bet. Although this is not a situation where defendant seeks to have the judgment overturned, defendant had a chance to evaluate the outcome of his case before making his recusal motion and has made no argument that he had good cause for delay. Had the jury found for defendant or the Second Circuit reversed without requiring a new trial, defendant would not be filing this motion. "Recusal motions are serious matters," *Apple v. Jewish Hosp. and Medical Center, supra,* 829 F.2d at 335, (Winter, J., concurring), not strategic devices to judge shop.

■ In addition to being untimely, defendant's motion is deficient in form because the affidavit was not "accompanied by a certificate of counsel of record stating that it is made in good faith" as required by § 144. This requirement is important because a judge is not allowed to scrutinize a § 144 affidavit for accuracy even if he "knows to a certainty that the allegations of personal prejudice are false." *In re Martin–Trigona, supra,* 573 F.Supp. at 1244. "If a certificate is to serve the purpose of shielding a court which cannot test the truth of claimed facts, it should at least carry the assertion that counsel believes the facts alleged to be accurate and correct." *In re Union Leader,* 292 F.2d 381, 385 (1st Cir.), *cert. denied,* 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). Although defendant's counsel's good faith is implicit in that all facts upon which this motion rests are set forth in the counsel's affidavit and an attorney's signature on an affidavit is a showing of good faith, *see* Rule 11, F.R.Civ.P., § 144 clearly requires a certificate of good faith which, by defendant's own admission, was not provided. Procedural requirements under § 144 are strictly construed and this lack of respect for clear requirements could in itself be sufficient grounds for denying defendant's motion.

## B.

■ Despite defendant's motion being deficient in both timeliness and form, "since the impartiality of the court has been questioned, it is important to address [defendant's] contentions on the merits." *Paschall v. Mayone,* 454 F.Supp. 1289, 1300 (S.D.N.Y.1978) (Carter, J.). Even assuming proper form and timeliness, I have no hesitancy in finding defendant's motion under §§ 144 and 455(b)(1) to be without merit. Under these sections, disqualifying prejudice "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). Defendant's entire argument attempting to show prejudice and personal bias is based on trial conduct and therefore cannot provide the requisite support for a recusal motion under these sections.

Apparently realizing the necessity for an extra-judicial source of bias, defendant has speculated that there is a "special relationship" between myself and plaintiffs' coun-

sel. Defendant has not provided any facts in support of this claim, but has merely argued that absent this alleged "special relationship" my rulings were "inconceivable." Memorandum of Law in Support of Defendants' Motion to Recuse the District Judge at 7. While in considering this motion under these sections I must take all facts as provided by defendant as true for the purpose of ruling on their legal sufficiency, *International Business Machines, supra,* 475 F.Supp. at 1379, I need not accept as fact mere conclusory speculation which lacks any factual support. *United States v. Eyerman,* 660 F.Supp. 775, 781 (S.D.N.Y.1987) (Pollack, J.), *appeal dismissed,* 857 F.2d 1462 (2d Cir.1987); *United States v. Corr,* 434 F.Supp. 408, 413 (S.D.N.Y.1977) (Weinfeld, J.); *United States v. Pastor,* 419 F.Supp. 1318, 1333 (S.D.N.Y.1975) (Motley, J.). Defendant does not attempt "to establish or identify any personal connection, relationship or extrajudicial incident which accounts for the alleged personal animus of the trial judge." *International Business Machines, supra,* 618 F.2d at 928. Other than the conclusory speculation of a "special relationship," all defendant's facts purportedly showing prejudice are rulings and conduct taking place during the trial, and, therefore, are legally insufficient to support a motion for recusal under §§ 144 and 455(b)(1).[3]

### C.

Section 455(a) is broader than §§ 144 and 455(b)(1) in that it provides that appearance of prejudice, as well as actual prejudice, constitutes a basis for recusal. "[Sec.] 455(a) is designed to negate the 'duty to sit' notion and to allow 'a greater flexibility in determining whether disqualification is warranted in particular situations.'"

*United States v. Wolfson,* 558 F.2d 59, 63 (2nd Cir.1977) (quoting *United States v. Ritter,* 540 F.2d 459, 462 (10th Cir.1976), *cert. denied sub nom. Olson Farms, Inc. v. United States,* 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976)). Despite this greater opportunity for an actionable claim, defendant's motion under § 455(a) is also without merit.

■ The test for appearance of prejudice is an objective standard "which assumes that a reasonable person *knows and understands all the relevant facts."* In re Drexel Burnham Lambert Inc., supra, 861 F.2d at 1313 (emphasis original). Section 455(a) was not meant to require disqualification every time one party can make some argument, no matter how unreasonable, that the appearance of prejudice would result. "[E]ach judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision.... Nothing in the proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial." S.Rep. No. 93–419, 93d Cong., 1st Sess., 1973, p. 5. Defendant is entitled to an unbiased judge, not a judge of his choosing.

■ Section 455(a) does not contain the term "personal" found in § 455(b)(1) and therefore it is not an absolute requirement that the disqualifying bias spring from an extrajudicial source, although the source of bias remains a relevant consideration. *United States v. Coven,* 662 F.2d 162, 168 (2d Cir.1981), *cert. denied,* 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982).[4]

---

**3.** Moreover, it would be impossible for defendant to allege facts sufficient to substantiate a claim of a "special relationship." In my 17 years on the bench, plaintiffs' counsel, Curtis, Mallet–Prevost, Colt & Mosle, has appeared in front of me less than a half-dozen times. I have no social connection with anyone at Curtis, Mallet and would not even recognize most of the lawyers there. Furthermore, the two Curtis, Mallet lawyers handling plaintiffs' case, T. Barry Kingham and Peter Fleming, Jr., and I have no personal relationship and barely even a pro-

fessional connection. To the best of my recollection, prior to this case Kingham had not appeared in front of me since 1977 when he was an Assistant United States Attorney and Fleming had not appeared in front of me since the mid-seventies in a case that did not go to trial.

**4.** Previously, *International Business Machines, supra,* 618 F.2d at 929, held that "under section 455(a) the bias to be established must be extrajudicial and not based upon in-court rulings." Other circuits have held that under both § 144

While it is possible for trial-related events to make out a sufficient case for recusal, *see, e.g., Reserve Mining Co. v. Lord,* 529 F.2d 181 (8th Cir.1976), courts generally have denied motions for recusal where the facts allegedly showing prejudice are all trial-related. *International Business Machines, supra,* 618 F.2d at 929; *King v. United States,* 576 F.2d 432, 437 (2d Cir. 1978), *cert. denied,* 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978); *United States v. Schwartz,* 535 F.2d 160, 165 (2d Cir. 1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977); *United States v. Berstein,* 533 F.2d 775, 784–85 (2d Cir.), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *Markus v. United States,* 545 F.Supp. 998, 999–1000 (S.D.N. Y.1982) (Weinfeld, J.), *aff'd,* 742 F.2d 1444 (2d Cir.1983).

Section 455(a) does not require that I accept all allegations by the moving party as true, *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir.1986), and I find many of defendant's factual allegations to be attributes or characteristics of some other judge.[5] I have no recollection of any bodily or facial movement on my part indicating pleasure or displeasure to the jury. Furthermore, although I at times may make short shrift of counsel's argument or statement, that reaction is clearly to the idea, concept or statement, not to counsel personally. This aside, even assuming the truth of all of defendant's allegations, they do not make out an apparent case of prejudice under § 455(a) because no reasonable person, knowing and understanding all the relevant facts, would conclude that there is even an appearance of partiality.

Defendant's attempt to make out a case of prejudice based on my posture and expression during closing arguments is without merit. Judges are not required to sit stone-faced and erect at all times, and to refrain from reacting to the event at which they are presiding. A reasonable person does not infer prejudice from normal bodily movement and facial expressions. Furthermore, the Second Circuit has recognized that an occasional display of displeasure or negative feelings does not constitute grounds for recusal. *International Business Machines, supra,* 618 F.2d at 931 ("[The Judge's] asperity and incivility may well be due to his feeling that a witness is not forthright, that he is trying to protect a position, or is otherwise attempting to obfuscate the fact finding process."); *United States v. Weiss,* 491 F.2d 460, 468 (2d Cir.), *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974) ("Judges, while expected to possess more than the average amount of self-restraint, are still only human. They do not possess limitless ability, once passion is aroused, to resist provocation.").

■ Defendant's complaint based on the postponement of trial granted to plaintiffs is likewise lacking in merit. It often is proper to postpone a proceeding because of schedule conflicts of counsel.[6] Scheduling is within the realm of judicial case management which is left to the discretion of the trial court and which does not provide a basis for recusal. *Johnson v. Trueblood,* 629 F.2d 287, 291 (3d Cir.1980), *cert. denied,* 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981).

■ Defendant's argument that I harbored bias against him and sought to disparage his testimony is not supported by the facts and must also be rejected. My reference to defendant as a "hostile witness" does not evidence bias, but is merely a legal term of art relating to circumstances enabling an attorney to examine a witness he has called by the use of leading

---

and § 455 the alleged bias must be personal and extrajudicial. *See, e.g., Davis v. Board of School Commissioners,* 517 F.2d 1044, 1052 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

**5.** It should be noted that many of defendant's factual contentions are disputed in affidavits filed by plaintiffs.

**6.** Although in this case the counsel around whom the trial was rescheduled was ultimately unavailable to try the case, such unavailability was for valid reasons not disputed by defendant. The fact that rescheduling was ultimately not necessary is irrelevant to the analysis because it could not have been foreseen.

questions. *See* Rule 611, F.R.Evid.[7] Likewise, my suggestion that defendant's answers were "evasive" and not "lucid" does not evidence bias. As a judge, I have a duty to insure that the testimony of a witness is understandable and, if necessary, should intervene to make it so. I am not only permitted, but duty bound, to prevent improper testimony, question witnesses if necessary to elicit important facts, and in general facilitate an orderly and understandable presentation of evidence. *International Business Machines, supra,* 475 F.Supp. at 1382. Furthermore, it is clear that isolated comments regarding the testimony, veracity or demeanor of a witness may not serve as grounds for disqualification. *Id.; United States v. Diapulse Corp.,* 457 F.2d 25, 30 (2d Cir.1972).

■ Finally, defendant's complaints about various adverse rulings made during the course of the trial, particularly regarding my refusal to permit defendant to call Herbert Stoller as a witness and rulings made regarding testimony of witnesses, cannot substantiate defendant's claim of bias. All rulings complained of by defendant were of the type normally made during the course of trial, and the fact that defendant thinks that an insufficient number were made in his favor does not show bias. *In re Teltronics Services, Inc.,* 39 B.R. 446, 452 (Bankr.E.D.N.Y.1984).

In short, even if taken as true, none of the alleged facts, and no combination thereof, presented by defendant provide any basis for recusal under § 455(a). Although certainly a judge must recuse himself if the question of appearance of impartiality is a close one, *Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir.1980), the circumstances of this case demonstrate that recusal is clearly not warranted.

### D.

Under Rule 11, "sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).[8]

■ The conduct of counsel being judged is measured by an objective standard of reasonableness under the circumstances. *Eastway Const. Corp. v. City of New York, supra,* 762 F.2d at 253. Sanctions are required under Rule 11 "where it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands." *International Shipping v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 (2d Cir.1989).

[18] "Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer." *Eastway Const. Corp. v. City of New York, supra,* 762 F.2d at 254. "[R]ule 11 is targeted at situations 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents....'" *Stern v. Leucadia Nat. Corp.,* 844 F.2d 997, 1005 (2d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988) (quoting *Eastway Construction Corp., supra,* 762 F.2d at 254). If a violation of

---

7. Rule 611, F.R.Evid., provides in relevant part: When a party calls a hostile witness ... interrogation may be by leading questions.

8. Rule 11 states in pertinent part: The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....

Rule 11 is found, sanctions must be imposed, although a court has discretion in fashioning an appropriate penalty.

■■■ As this opinion demonstrates, defendant's motion to recuse must be denied. However, sanctions are only warranted if the motion was made for an improper purpose, or a competent attorney could not reasonably believe that the motion is well grounded in fact, and warranted by existing law or a good faith argument to in some way modify such law.

I begin by noting that I do not believe that defendant[9] has brought the recusal motion for an improper purpose. Improper purpose is a subtle demon, often cloaked behind a mask of sophisticated legal argument. Accordingly, determining improper purpose is difficult and requires consideration of the nature and history of the litigation as a whole as well as the instant motion. As is so often the case when a partnership composed of individuals dissolves, particularly when there is a great deal of money at stake, plaintiffs and defendant, and to a degree their respective counsel, are bitter towards each other. Despite this animosity, and the fact that delay of the proceedings is in the interest of defendant, I do not find that this motion was brought for an improper purpose. First, defendant has no incentive to increase costs as any needless litigation must also involve costs which are personally borne by him. Second, and most importantly, I believe that defendant, although mistaken, truly thinks that I am biased against him and has made this motion for that reason.

In considering whether defendant's motion is warranted by current law, it should first be noted that defendant has not met the procedural requirements regarding timeliness and form. Additionally, defendant's claim under §§ 144 and 455(b)(1) is patently insufficient for the reasons indicated above. Furthermore, defendant has made no argument for the extension, modification or reversal of existing law.

Defendant's saving grace from Rule 11 sanctions is his claim under § 455(a). In his memoranda of law, defendant cites cases from other circuits holding that recusal may properly be granted under § 455(a) based only upon judicial prejudice arising from trial-related events. This also appears to be the law in the Second Circuit, although no Second Circuit cases were cited by defendant. In *United States v. Coven, supra,* 662 F.2d at 168, the Second Circuit re-affirmed its holding in *United States v. Wolfson, supra,* 558 F.2d at 63, which, when considering § 455(a), stated, "we do not read the authorities [interpreting "personal" as "extrajudicial"] as holding that a judge's conduct of proceedings before him can never form a basis for finding bias."[10] Accordingly, defendant's motion for recusal pursuant to § 455(a) has a basis in law.

Whether defendant's recusal motion is well grounded in fact is more difficult to determine. Not only have there been few cases to date in which judicially related events evidencing bias were sufficient in and of themselves to require recusal, but the cases which do exist have facts which differ dramatically from the case at hand.[11] Nevertheless, mindful that the purpose of Rule 11 is not to dampen robust advocacy and that I must resolve all doubts in this case in favor of defendant, I find there is sufficient factual support to defeat a motion for Rule 11 sanctions as defendant has

---

**9.** All references to defendant in the discussion regarding plaintiffs' Rule 11 motions refer to both defendant and his counsel.

**10.** *United States v. Coven, supra,* is in opposition to *International Business Machines, supra,* although it did not explicitly over-rule it. *See, supra,* at 516–17, n. 5.

**11.** *See, e.g., Webbe v. McGhie Land Title Co.,* 549 F.2d 1358, 1361 (10th Cir.1977) ("trial judge, without reading the depositions, and based on the oral argument of counsel [for only one side], announced that the insurance company was 'stuck' before even permitting counsel for the insurance company to address the court," and ultimately granted summary judgment.); *Reserve Mining Company v. Lord,* 529 F.2d 181 (8th Cir.1976) (Circuit Court ordered the recusal of the District Court Judge who rendered judgment without giving one party an opportunity to be heard or to cross-examine witnesses because such denial of due process reflected great bias.).

alleged a small number of facts which lend some support to his recusal motion. *See supra* at 517–18. Although I still consider the factual basis for defendant's motion to be very weak, under these circumstances I cannot find that no competent attorney could reasonably conclude that the instant set of facts are actionable, and, accordingly, Rule 11 sanctions are not warranted.

## II.

### A.

When costs are awarded to a prevailing party on appeal, a portion of the costs is taxed in the circuit court and a portion is taxed in the district court.[12] The portion taxed in the district court is done for "general convenience" and considered a cost of the appeal. Rule 39(e), F.R.App.P. Advisory Committee Notes. In this case, the Second Circuit ordered that plaintiffs pay the costs of the appeal[13] and taxed a portion of the costs. Although the amount taxed by the Court of Appeals has been paid in full, plaintiffs contend that inappropriate costs were taxed in the district court.

■ As a preliminary matter, plaintiffs' contention that the court has discretion regarding whether, when and to what extent to award the costs of the appeal must be rejected. A district judge has discretion under Rule 54(d), F.R.Civ.P.,[14] with respect to trial costs, but has no discretion with respect to appellate costs. Although it is the court's responsibility to see that only proper costs are awarded, the Second Circuit ordered plaintiffs to bear the costs associated with the appeal and that directive must be followed. Plaintiffs' argument that taxing the costs now would be expensive and inefficient is without merit, and defendant is entitled without delay to all costs properly taxed.

[21] The premium for the supersedeas bond ($71,063.00), the cost incurred in the preparation and transmission of the record ($452.17), the costs of the reporter's transcript ($5,438.42), and the docket fees ($105.00), these items together totaling $77,058.59, are properly taxed. Rule 39(e), F.R.App.P. The other costs taxed by the district court clerk, however, must be vacated.

■ In this circuit, costs of a letter of credit used to obtain a bond are not recoverable.[15] "Borrowing expense, sought in addition to the premium on a sueprsedeas bond, is not a permissible item of taxable appellate costs ..." *Lerman v. Flynt Distributing Co., Inc.*, 789 F.2d 164, 167 (2d Cir.), *cert. denied*, 479 U.S. 932, 107 S.Ct. 404, 93 L.Ed.2d 357 (1986).[16] Defendant's reliance on *Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173 (2d Cir.1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976), is misplaced. As *Lerman* explains, *Trans World Airlines* "simply held that costs of appeal that are agreed to and less expensive substitutes for costs explicitly authorized in Rule 39(e)

---

**12.** Rule 39(e), F.R.App.P., provides:

Costs incurred in the preparation and transmission of the record, the cost of the reporter's transcript, if necessary for the determination of the appeal, the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal, and the fee for filing the notice appeal shall be taxed in the district court as costs of the appeal in favor of the party entitled to costs under this rule.

**13.** Neither party yet has prevailed at the trial level on the merits of the case, and therefore no costs connected with the trial court proceedings can be yet awarded.

**14.** Rule 54(d), F.R.Civ.P., provides in relevant part:

[C]osts shall be allowed as of course to the prevailing party unless the court otherwise directs....

**15.** This is also the position of the Ninth Circuit, *John v. Pacific Lighting Land Co.*, 878 F.2d 297, 298 (9th Cir.1989), but the First and Third Circuits allow such costs. *Bose Corp. v. Consumers Union of U.S., Inc.*, 806 F.2d 304, 305 (1st Cir. 1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *Copperweld Steel Co. v. Demag–Mannesmann–Bohler*, 624 F.2d 7, 9 (3d Cir.1980).

**16.** The facts in *Lerman* dealt specifically with interest charges incurred in borrowing funds used as collateral to secure a supersedeas bond. This is not significantly different, however, than charges for a letter of credit used as collateral to secure a supersedeas bond.

are allowable." *Lerman v. Flynt Distributing Co., Inc., supra,* 789 F.2d at 166.

*Lerman* makes clear that the cost of the letter of credit in the instant case cannot be taxed. First, defendant's contentions to the contrary notwithstanding, this cost was not agreed to by the parties or even brought to the attention of plaintiffs or the court. Defendant can point to no place in the transcript where the term letter of credit was mentioned or a monetary figure was put on the cost of collateral. Second, there is simply no evidence that the total cost of the letter of credit plus the bond premium is less than what the total cost of the bond premium would have been without a letter of credit. Defendant has indeed submitted a letter from one of the bonding companies stating that a letter of credit results in a lower premium, but does not attempt to quantify the savings in this case and it is therefore unknown whether this combination was in fact less expensive.

Defendant's claim that he purchased the letters of credit in this instance because he "had no choice" is not supported by the record,[17] and, in any case, is irrelevant. "Whether [he] secured that bond with an asset [he] owned or with a purchased certificate of deposit ... or with borrowed cash ... [is] not the concern of [plaintiffs]." *Lerman v. Flynt Distributing Co., Inc., supra,* 789 F.2d at 166. Defendant's decision how to collateralize his bonds was properly his alone; the expense associated with such collateralization is also his alone.

■■■ The premium paid to obtain the new trial bond is likewise not taxable. The new trial bond is not a supersedeas bond or a bond to preserve rights pending appeal, Rule 39(e), F.R.App.P., or set forth in 28 U.S.C. § 1920, and therefore the premium paid to obtain it may not be taxed. *See, Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). While often a step taken before filing an appeal, a motion for new trial is totally unrelated to the appellate process. At the time the new trial bond was posted, an appeal had not yet been filed in this case, and it was not clear that one would ever be.

**B.**

■■■ Plaintiffs bring their Rule 11 motion based on defendant's representation in his brief and affidavit that the court and plaintiffs had knowledge that defendant was expending substantial sums on letters of credit. The court did not have this knowledge, and credits plaintiffs' statements that they likewise lacked this knowledge. Although both plaintiffs and the court had knowledge that collateral would be required to secure the bonds, it was not known that it would take the form of expensive letters of credit.

The issue, however, is not whether plaintiffs and the court actually had such knowledge, but whether a competent attorney could hold a reasonable belief that they did. Although this pushes on the boundaries of reasonableness, I find, resolving doubts in favor of defendant, that he reasonably could have believed that plaintiffs and the court had knowledge of the letters of credit. Defendant's submission includes letters from two different surety companies explaining that letters of credit are the usual, if not the only, means of providing collateral to bonding companies in situations such as this. This, taken into account along with the sophistication of plaintiffs' counsel, makes it not unreasonable for defendant to assume that everyone understood that a letter of credit would be used as collateral.

Although defendant scrapes by, it remains that this whole misunderstanding could have been avoided had he said specifically that a letter of credit would be used and described the attendant expense instead of just referring to "collateral." Assumptions such as the kind evidently made by defendant are not to be encouraged.

Because plaintiffs and their counsel did not misrepresent the record in making their

---

**17.** It is not apparent that the defendant was so constrained. Had defendant's plan to obtain a letter of credit and the staggering cost involved been made known, the court certainly would have entertained argument regarding other possible means of securing plaintiffs' judgment.

motion, defendant's cross-motion for Rule 11 sanctions is denied.

## Conclusion

In sum, defendant's motion for me to recuse myself on retrial is denied; plaintiffs' motion to vacate taxation of costs is granted in part and denied in part, and plaintiffs are ordered to pay costs to defendant in the amount of $77,058.59; and, both parties' motions for Rule 11 sanctions are denied.

IT IS SO ORDERED.