Dhoruba BIN–WAHAD, Plaintiff,

v.

Thomas A. COUGHLIN, Charles Scully, E.W. Jones, Melvin Hollins, and Robert Kuhlmann, Defendants.

No. 86 Civ. 4112 (CBM).

United States District Court,
S.D. New York.

April 5, 1994.

## OPINION

MOTLEY, District Judge.

This action is presently before this court on defendants' renewed motion for recusal. For the reasons stated herein, their motion is denied.

### FACTS

Plaintiff Dhoruba Bin–Wahad, a former leader of the Black Panther Party, was indicted for the attempted murder of two New York City police officers in 1971. After three trials, two of which resulted in a hung

jury, he was convicted and sentenced to 25 years to life imprisonment. In 1988, plaintiff filed a motion in the New York State Supreme Court to vacate his criminal conviction which was granted by the Honorable Peter J. McQuillan in March 1990. After serving nineteen years in prison, plaintiff was released in 1990 and is currently free on bail pending an appeal of Judge McQuillan's decision. Pl.'s Trial Memo. at 1–4.

Plaintiff was in the custody of the New York State Department of Correctional Services ("DOCS") from approximately April 1973 until his release in March 1990. Pl.'s Trial Memo. at 4. In May 1986, plaintiff filed a complaint in this District alleging that his transfers to various prisons in the New York State Correctional System were in retaliation for exercising his constitutional rights while in prison. During his incarceration, plaintiff claims that he was deprived of his constitutional rights to free speech, freedom of religion, and due process of law by defendants because: 1) he was a member of the Black Panther Party; 2) he was convicted of the attempted murder of the police officers; 3) he was a practicing Sunni Muslim; and 4) he was an African–American. More specifically, plaintiff claimed that defendants, all of whom presently are New York State Corrections Officers or were Corrections Officers at the time plaintiff was incarcerated, conspired to retaliate and did retaliate against him by: 1) transferring him to less desirable prison facilities after he engaged in free speech and religious activities; 2) placing him in Keep–Lock in his cell; 3) placing him in a Segregated Housing Unit; and 4) placing him in Involuntary Protective Custody without due process of law. Tr., 2421–22.

Plaintiff's case was originally assigned to the Honorable Kimba M. Wood but was reassigned to this court in accordance with Local Rule 13 because it was ready for trial. Following a six-week jury trial held in November and December 1993, the court granted a mistrial after the jury failed to reach a verdict on December 3, 1993.

After defendants concluded their case, they orally moved for the court's disqualification based primarily on comments which the court made during the course of the trial. Tr. 2119–21. The court denied defendant's motion but granted them the opportunity to renew their motion after trial. Tr. 2225. As a result, defendant's filed the current motion on February 3, 1994.

Defendants have moved under §§ 144 and 455 for this court to recuse itself from any retrial of this case. To support their motion, counsel has appended a seven-page affidavit signed by defendant Thomas Coughlin requesting that the court "disqualify itself from any further proceeding in this case because a reasonable person would conclude that [its] impartiality could reasonably be questioned, and because the Court [sic] has demonstrated a personal bias against the defendants." Aff. of Thomas A. Coughlin, ¶ 1 ("Coughlin Aff."). According to defendants, such bias was exhibited by various statements made by plaintiff's counsel and the court both preceding and during the trial held in this matter in November and December 1993. After carefully considering defendants' allegations, their renewed motion for recusal is denied.

## DISCUSSION

### Standard for Motion to Recuse

Title 28 U.S.C. § 144 requires recusal "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party...." It further requires that the affidavit "state the facts and reasons for the belief that bias or prejudice exists" and be "accompanied by a certificate of counsel of record stating that it is made in good faith."

Similarly, § 455 provides in pertinent part: "Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," such as "[w]here he has a personal bias or prejudice concerning a party...." 28 U.S.C. §§ 455(a), 455(b)(1) (1993).

■■■ While courts have generally considered § 455 broader in application than its

counterpart, the analysis and standards under both sections are the same. *See Apple v. Jewish Hospital and Medical Center,* 829 F.2d 326, 333 (2d Cir.1987) (§§ 144 and 455 should be read *in pari materia* ). For instance, both sections require that the alleged personal bias or prejudice stem from an extrajudicial source. *King v. United States,* 434 F.Supp. 1141, 1144 (S.D.N.Y.1977), *aff'd,* 576 F.2d 432 (2d Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978). Moreover, the standard for recusal under both § 144 and § 455 is whether a reasonable person, knowing and understanding all relevant facts, would recuse the judge. *Person v. General Motors Corp.,* 730 F.Supp. 516, 518 (W.D.N.Y.1990); *Allen–Myland v. International Business Machines,* 709 F.Supp. 491, 493 (S.D.N.Y.1989) (quoting *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988)).

 When considering a recusal motion, a judge must accept all factual allegations raised in the affidavit as true, even if she knows them to be false. *Blank v. Sullivan,* 418 F.Supp. 1, 2 (S.D.N.Y.1975) (Motley, J.). However, this does not prohibit the court from inquiring into the legal sufficiency of the affidavit. If the allegations are found insufficient as a matter of law, the judge has a duty not to recuse herself. *Id. See also, National Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (the mere filing of an affidavit does not result in automatic recusal; the judge has a duty to inquire into the legal sufficiency of the complaint); *King,* 434 F.Supp. at 1144 (judge has a duty to pass on the legal sufficiency of the complaint). The affidavit must "show a true personal bias and allege specific facts" as opposed to mere conclusions and generalizations. *United States v. International Business Machines,* 475 F.Supp. 1372, 1379 (S.D.N.Y.1979) ("*IBM I* "). Moreover, the judge is presumed to be impartial and a substantial burden is imposed on the affiant to prove otherwise. *Farkas v. Ellis,* 768 F.Supp. 476, 478 (S.D.N.Y.1991); *IBM I,* 475 F.Supp. at 1379.

Even if this court accepts defendants' allegations as true, they do not support a finding of personal bias or prejudice under either § 144 or § 455 for three important reasons. First, defendants have submitted an untimely affidavit that fails to conform to the requirements established under § 144. Second, they have presented no evidence to substantiate their allegations that the court was subjected to the same FBI investigation of which plaintiff complains. Finally, the remaining allegations are based solely on the court's trial rulings and conduct, evidence which cannot be used to substantiate a recusal motion.

### A. Procedural Defects

Although the substantive tests for bias under §§ 144 and 455 are identical, the procedural requirements are different: § 144 expressly conditions relief upon the filing of a timely and legally sufficient affidavit accompanied by a certification that the affidavit has been filed in good faith. 28 U.S.C. § 144 (1993); *Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir.1973); *Lamborn v. Dittmer,* 726 F.Supp. 510, 514 (S.D.N.Y.1989). As many courts have held, these procedures must be strictly followed and if there is any deviation, the motion should be denied. *Galella,* 487 F.2d at 997; *Dittmer,* 726 F.Supp. at 514; *United States v. Johnpoll,* 748 F.Supp. 86, 88 (S.D.N.Y.1990).

 A motion for recusal should be filed "at the earliest possible moment after obtaining facts demonstrating a basis for recusal.[1]" *Dittmer,* 726 F.Supp. at 514; *Apple,* 829 F.2d at 333. Further, courts have considered four factors in determining the timeliness of a disqualification motion: (1) whether the movant has substantially participated in trial or pre-trial proceedings; (2) whether granting the motion would represent a waste of judicial resources, (3) whether the motion was made after the entry of judgment, and (4) whether the movant can demonstrate good cause for delay. *Apple,* 829 F.2d at 334.

---

1. While § 455 has no procedural requirement, prior courts have considered the timeliness of a motion under this section in cases where a party has moved for disqualification under §§ 144 and 455. *United States v. Wallach,* 788 F.Supp. 739, 741 (S.D.N.Y.1992); *IBM,* 475 F.Supp. at 1377.

■ Defendant's filed their first motion in November 1993, approximately two weeks before the trial ended on December 3, 1993. Yet, despite the urgency that defendants' expressed when they made the oral motion, they did not file the renewed motion until February 3, 1994, approximately ten weeks after the first motion was made and exactly two months after the conclusion of the trial. Clearly, defendants' motion is untimely. As early as October 1993, at a pre-trial conference held in this matter, defendants and their counsel heard statements made by the court and plaintiff's counsel suggesting that this court was the target of a federal Government investigation during the Civil Rights Movement and that a young cousin of the undersigned was involved in the Black Panther Party at college and was the victim of an alleged plot by the FBI's counterintelligence. However, defendants neglected to state their concerns until they concluded their case, exactly four weeks after they first learned of what they now claim is "prejudicial information." On this basis alone, the court could deny defendants' motion; however, given the seriousness of such a motion, the court will address the remaining allegations.

### B. Lack of Evidence to Support Claims of Impartiality

■ Defendant Coughlin claims in his affidavit that the court's impartiality was questioned by comments made by plaintiff's attorney during a pre-trial conference suggesting that the court was the subject of the same FBI COINTELPRO investigation as plaintiff. Coughlin Aff., ¶ 3. More specifically, defendant Coughlin relies on the following statement made by plaintiff's counsel, Elizabeth M. Fink, Esq. at the pre-trial conference:

> MS. FINK: Do you remember Senator Church? He held a hearing investigation on the FBI and [the COINTELPRO] program came out. It was about the annihilation of black leaders, Martin Luther King, Malcolm X, about the destruction of the

black movement, of the civil rights movement. There was a file on your Honor when your Honor was not a judge. I don't know if you have ever gotten a file [under the Freedom of Information Act ("FOIA")]. You will find that you yourself when you were not a judge were a target of J. Edgar Hoover's plan. Tr., 37 (Pre-trial Conference held on October 21, 1993).

As a nominee for high federal office, the undersigned has been the subject of an investigation by the FBI as are all such nominees. The results of this investigation were disclosed before and during my Senate confirmation which occurred almost thirty years ago.[2] This was before the "Church Report." As the undersigned stated to Ms. Fink at the pre-trial conference, I am unaware of the "Church Report." To my knowledge I have never been identified as a subject of the FBI's COINTELPRO investigation of the late 1960's or early 1970's. Further, out of an abundance of caution, following Ms. Fink's inappropriate remarks, the undersigned informed the parties at that same pre-trial conference that a young cousin was a member of the Black Panther Party at U.C.L.A. about 1970 and allegedly was killed by an FBI-instigated activity against the Panthers. Again, defendants did not uncover this information. It was candidly provided to them by the court. Defendants', after colloquy with counsel and the court, did not consider it the basis for recusal until they felt the court's comments during trial with respect to the evidence and defendants' conduct were adverse to their interests.

■ While the allegations made in a recusal motion are to be taken as true, they must be strictly construed and are insufficient if they merely state conclusions, rumors, beliefs and opinions. *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10 Cir.1988). Recusal is not warranted for remote, contingent or speculative reasons. *U.S. v. Ahmed*, 788 F.Supp. 196, 202 (S.D.N.Y.1992). In each

---

2. The only other relevant matter of which I am aware was by the U.S. House of Representatives Committee on Un–American Activities which kept a list of everyone who was publicly identified with the Civil Rights Movement. As I stated previously, this matter was publicly disclosed and discussed before and during my confirmation. The FBI was not involved with the House Committee's listing to my knowledge.

recusal motion, defendants have relied on the same unsubstantiated statement made by Ms. Fink about the "Church Report" and remarks made by this court regarding alleged FBI activity at U.C.L.A. Yet, "defendants" have made no attempt to corroborate any of these alleged "facts." Accordingly, such statements do not warrant recusal in this case.

## C. *Trial–Related Conduct and Rulings*

Defendants further complain that the court exhibited its partiality through various comments made during the course of the trial. More specifically, defendant Coughlin refers to comments made by the court concerning the attentiveness of the Department of Correctional Services in transferring inmates who were scheduled to testify at the trial, comments concerning the credibility of defendants' trial witnesses, and statements about the competency of defense counsel during trial. Coughlin Aff., ¶¶ 8–10. Because of these statements, defendants argue that "the Court's [sic] impartiality in this case could reasonably be questioned, and ... the Court [sic] has demonstrated personal bias against [them]." *Id.* at ¶ 11.

It is well-settled that comments and opinions expressed by the judge that are solely based on the evidence presented during trial are not grounds for disqualification. In *Liteky v. United States,* —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Supreme Court recently held that a judge could not be disqualified from a case because of judicially-related trial rulings and comments against defendants even if the judge had previously presided over the same defendants at another trial.

In 1991, John Patrick Liteky, Charles Joseph Liteky ("Litekys"), and Roy Lawrence Bourgeois ("Bourgeois") were tried and convicted for the wilful destruction of United States property during a protest against the United States policy in El Salvador. Eight years earlier, the same District Judge who presided over the 1991 trial presided over another trial ("1983 trial") in which defendant Bourgeois was convicted on misdemeanor charges resulting from a similar protest. *Id.* at ——, 114 S.Ct. at 1149.

Before and during the 1991 trial, defendants moved that the District Judge recuse himself from the case pursuant to 28 U.S.C. § 455(a). The first motion was based on rulings and statements made by the judge that allegedly displayed "impatience, disregard, and animosity towards the defense during and after defendant Bourgeois' 1983 trial." *Id.* at ——, 114 S.Ct. at 1149. The second motion was based on the judge's admonishment of defendant Bourgeois' defense counsel and codefendants in front of the jury at the 1991 trial. Both motions were denied. The Court of Appeals affirmed the decisions, agreeing that matters arising from judicial proceedings are not a proper basis for recusal. *Id.*

The Supreme Court upheld the decision of the Court of Appeals,[3] deciding that recusal is required only where a judge cannot render a fair judgment based on (1) knowledge acquired outside the judicial proceeding in which recusal is being sought; or (2) a deep-seated and unequivocal antagonism displayed in the judicial proceeding. *Id.* More specifically, the *Liteky* Court found the following

---

**3.** While the Supreme Court upheld the appellate decision, it diminished the importance of the long-standing "extrajudicial source doctrine" that has been the basis of established recusal jurisprudence. In reaching its decision, the Court noted that it is never appropriate for a court to exhibit bias or prejudice either against a party or in favor of a party to an action regardless of whether its source was extrajudicial. According to the Court:

> [T]he fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will some-

times (albeit rarely) suffice. Nor is it a *sufficient* condition for "bias or prejudice" recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" *factor,* than of an "extrajudicial source" *doctrine,* in recusal jurisprudence.

*Liteky,* at ——, 114 S.Ct. at 1157 (emphasis supplied).

types of judicial action cannot form the basis of a recusal motion:

> [F]irst, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.... In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.... *Not* establishing bias or partiality, ... are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky,* at ——, 114 S.Ct. at 1157 (emphasis supplied).

The Second Circuit similarly has rejected those recusal motions that are based solely on comments and rulings made in a judicial capacity. In *In re Drexel Burnham Lambert Incorporated,* 861 F.2d 1307 (2d Cir. 1988), *cert. denied, Miliken v. S.E.C.,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989), the Second Circuit held that a district judge's "sharp colloquy" with defense counsel did not demonstrate a bias toward defendant that warranted recusal. Rejecting petitioner's claims that the judge's "criticism of [defense counsel's] trial behavior" mandated recusal, the court found that disqualification must be determined "on the basis of conduct which shows bias or prejudice or a lack of impartiality by focusing on a party, not on counsel." 861 F.2d at 1316. As a result, "[t]he sharpness in colloquy between the judge and counsel, ... does not demonstrate bias, but is well within the acceptable boundaries of courtroom exchange." *Id.; see also, In re International Business Machines Corp.,* 618 F.2d 923, 932 (2d Cir.1980) ("IBM II") (the court's sporadic "flare-ups" toward counsel do not provide any basis for finding personal prejudice against a party).

██ Based on established recusal jurisprudence, it is clear that the following types of evidence will not support a recusal motion: judicial rulings based on evidence presented at trial, *Liteky,* —— U.S. at ——, 114 S.Ct. at 1157; judicial comments based on evidence presented at trial, *Id.,;* the court's observations regarding the legal sufficiency of evidence presented at trial, *U.S. v. Conforte,* 624 F.2d 869, 882 (9th Cir.1980); or the court's observations regarding the credibility of trial witnesses. *U.S. v. Bernstein,* 533 F.2d 775, 785 (2d Cir.), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). Essentially, "[w]hat a judge learns in his [or her] judicial capacity ... is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification." *Bernstein,* 533 F.2d at 785.

Defendants claim that the court's comments on the events occurring during trial are not the result of the evidence presented but, instead, reflect a "deep-seated bias" against them obtained from "the Court's [sic] previous experiences in other cases." Def.'s Memo. at 12. Were a reasonable person to consider the court's alleged comments in the context in which defendant has presented them, he or she might possibly consider disqualification appropriate. However, to lend clarity to these statements, I am quite certain that this same reasonable person would want to hear the full record to completely understand the circumstances in which they were made.

██ For example, while defendant Coughlin quotes excerpts of comments that the court made regarding the delays in

bringing the inmate witnesses to the federal Metropolitan Correctional Center ("MCC") in his affidavit, he neglects to mention that plaintiff filed writs ad testificandum with this court one week before the inmates' scheduled appearances and that defendants had a witness list long before trial began. Tr., 456. Yet, despite this preparation, defendants, most of whom are responsible for the transportation of the prisoners in their facilities, failed to properly produce them on time, causing unnecessary and excessive delay. Accordingly, the court's comments reflect the frustration which certainly has been experienced by every judge interested in efficient trial administration as opposed to a "deep-seated antagonism" against defendants.[4]

4. More specifically, the following dialogue more accurately reflects the court's discussions with Robert Boyle, Esq. and Elizabeth Fink, Esq. (plaintiff's attorneys) and Michael Popkin, Esq., defendants' attorney, regarding this matter on November 8, 1993:

THE COURT: How many other prisoners have not been brought down?

MR. BOYLE: We might be in trouble today here. We have Mr. Memminger, Mr. Drelich, Yusef Al–Mussidiq—that is it. These 3 are not in the city, as far as I know. Mr. Memminger and Mussidiq according to the writ that the court signed were supposed to be brought to the MCC on Friday. They were not. And then brought to court today. Mr. Drelich was the special case because of the disability, he was just supposed to be brought here today and brought back.

．　．　．　．　．

THE COURT: When were the writs signed?

MR. BOYLE: The amended writs were signed a week ago—about 10 date [sic] prior—

MR. POPKIN: Friday a week, I [sic] it would say.

THE COURT: A week ago Friday?

MR. POPKIN: Exactly.

MR. BOYLE: But I believe the department knew they were going to be coming down for about a month, because we had originally served other writs which called for the facts [sic] that they were to be brought down to the MCC in case they were going to be staying overnight.

Maybe defense counsel can shed some light on where they are at this point or make some inquiries so we don't have any down time with the jury today, because these are basically going to be our witnesses today.

．　．　．　．

THE COURT: Are you able to find out where they are?

MR. POPKIN: I'd be happy to make every inquiry I can, your Honor. We really don't know as we sit here what the situation is. We don't know who is going to be or not, as we sit here. But I would ask that there not be testimony elicited—

THE COURT: On what subject?

MR. POPKIN: Like when you came down here,—

THE COURT: I am going to allow it, because as Ms. F[ink] points out, this goes on all the time. No matter how far in advance we sign for prisoners to come down, there are always problems. So I am going to allow it in as continuing conduct on the part of the prison officials. Are you seeking an injunction?

MS. FINK: Yes.

THE COURT: This would go to enjoin them from doing this in the future. Part of the relief to which the plaintiff would be entitled. And of course if there are contemporaneous similar acts in that the plaintiff is complaining that he was being mistreated because of who he is, he is a Muslim and Panther and this, that, and the other. This would go to that issue also, it seems to me.

A pattern of conduct relating to prisoners who are like the plaintiff in this case. So you better find out what happened to them, and if they are not here when its time for them to be called, each witness is going to be allowed to testify to that. Let's proceed.

．　．　．　．　．

THE COURT: As I indicated earlier when we took this up, I wanted to know when the writs went out, because my recollection was they went out well in advance, like a month in advance to give the prison authorities notice that they should be coming down here.

And we took that precaution, I made sure that my law clerks got those writs returned, whoever presented them to us, because I have had persons in the past with this kind of thing. Almost invariably, from [sic] matter what order is issued to the prison authorities, and the same thing applied to our marshals, I don't try that many cases now, but I used to try a lot of these cases, no matter what advance notice they had, they never had the prisoner here on time.

If necessary and whenever [sic] to go through the records of the court to prove that, we are going to do it. But I think the way to stop it, it just occurred to me, is to do exactly what I am doing now. That will make them get them here on time. Because the director [of] Bureau of Prisons has the power to make sure it was done on time.

So we are sitting here with a 7 year old case, which I took from another judge who is too busy an [sic] other cases to try to get rid of this case, and we are sitting here waiting for defendants, prison officials, correctional officers who have been notified a month in advance that certain prisoners should be brought down here to testify. So there is absolutely no excuse for what's happened now except defiance on the part of these correction officials and

■ Likewise, the court's comments regarding the credibility of the defense witnesses and the legal sufficiency of evidence presented against defendants were based on the facts adduced at trial. While it is true that the court wrote the opinion in *Sostre v. Rockefeller*, 312 F.Supp. 863 (S.D.N.Y.1970), *rev'd in part*, 442 F.2d 178 (2d Cir.1971), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972), the opinion reached in that case approximately twenty-four years ago could not form the basis for a recusal motion in this case. *Liteky*, —— U.S. at ——, 114 S.Ct. at 1157. As my opinion of defendants' conduct has not changed since the trial, I feel it most appropriate to repeat those comments which most adequately summarize the evidence presented:

THE COURT: The point is that this is an extraordinary case and as I pointed out when the plaintiff first came in here with a lot of allegations in their prior pre-trial order, ... I cautioned them, [sic] that they

others who think that they control the court and that the judge should sit and wait on them.
MR. POPKIN: Your Honor, can I put something on the record in terms of what I do know happens [sic] is that the original writ at the time of the pretrial conference was defective and amended writs were submitted sometime about—they were delivered to—I don't know the exact chronology, but about a week before trial there was some contact between our office and Ms. Fink's office to try to get some amended writs that would allow for the prisoners to be delivered to the custody of the marshals and at MCC because the original writs simply said bring them to the court and were not addressed to the correctional center or to the Federal Marshals Service. So the timing at the time the original writs were signed—
THE COURT: But the prison officials should have notified the marshals here that they had that writ and that these prisoners would be brought down. What prevented them from doing that?
MR. POPKIN: The thing that—
THE COURT: What prevented them from doing that?
MR. POPKIN: It could have been when they were delivered to me, I was not aware that I had amended writs on the Friday before the first jury selection, in my possession. And that among [sic] Monday morning when we came in to pick a jury there was some confusion and I immediately had them Faxed [sic] to counsel's office.

 . . . .

THE COURT: That was when, when the case started a week ago?

would have to produce evidence and proof of these allegations, which seemed really unusual; is the mildest way I can put it.

And I suggested to them that they draft a trial memorandum to try to get a handle on this thing, because I thought that what we have is a series of allegations that could not in any way be proved by a fair preponderance of the credible evidence.

It turns out that was wrong. They have more than a fair preponderance of the credible evidence, as I said the other day. They have some startling evidence; which I didn't believe that he could possibly produce in black and white. Letters and memos by your client, withholding of files by your client. Why would anyone withhold a file, let alone state officials, withhold a file of public record, knowing full well that that record should have been produced here on this trial?

That is an unusual case. I have never had a case where a public official was

MR. POPKIN: Yes. I think the writs were delivered to my office I believe on the Friday afternoon before last Friday. In other words, about 10 days ago. And then they lay on my desk until Monday. I didn't even know that I had them.
Basically that is the chronology as far as I am able to establish it. What I would request is that if the court feels it's a very serious issue, I can't testify about this, it would seem that there is a factual inquiry here. I'm sure we could figure out what happened, but I am still a little confused.
THE COURT: Are there any witnesses downstairs?
THE CLERK: Memminger and Jones are still at MCC. Marshals ordered them Friday, but MCC did not produce them for the marshals this morning. So he says it's going to take them at least 45 minutes to get out of the MCC.
THE COURT: Do you know how many times I heard that in the last 28 years? Do you know how many times I heard that? I can't begin to tell you. That's the problem here. I can't begin to tell you how many times that has happened, exactly what she said. And the same thing is happening.
So something has to happen, and one of the things that could happen is that the jury should know about what happens in prisons. That is what they are complaining about. Exactly that attitude of defiance against the courts, against everybody else. So they should hear this as part of the plaintiff's case. That is a part of it.
Tr. 435–37; 67–70.

found by me to have withheld a file that should have been produced. And I have rarely seen in writing, an out and out statement of the fact that the plaintiff was viewed by the officials as somehow dangerous because of his views, and because he is a Muslim and because he was a Black Panther, whatever. Usually those things are not in writing. That is why this case is extraordinary. It really is.

And the proof which was adduced here, as I say, I never thought they had any such proof. So in that respect it's an extraordinary case. Not only did Mr. Jones withhold a file, but I gather he then discovered when he went home, that memo of this Edwards—was it—

MR. POPKIN: Yes.

THE COURT: —and decided to turn that over. After all of that in court, he sat through all the discussion, where I expressed amazement that a file had been withheld, where the plaintiff's attorneys argued furiously that it had been withheld, he sat there through all of this. Then he goes home and apparently in his home finds some more files which he gave to the witness Kuhlmann, was it?

MR. POPKIN: Yes.

THE COURT: That was extraordinary, absolutely. Extraordinary. And this case has been going on for 7 years. On the whole business of the way people are treated in prison has been going on now for 25 years. So we are not dealing with some new emerging jurisprudence, violation of the rights of prisoners is now a separate, well established jurisprudence, [of] which every correction official is aware. Tr., 2117–19.

As the Supreme Court ruled:

The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or

prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.... "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those courthouse dramas called trials, he could never render decisions."

*Liteky,* at ——, 114 S.Ct. at 1155 (*quoting, In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (2d Cir.1943)).

■ It is well-established that a federal judge may comment upon the evidence presented in a case. *Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 698–99, 77 L.Ed. 1321, 1325 (1933); *United States v. Lartey,* 716 F.2d 955, 966 (2d Cir.1983). Moreover, in a jury trial, such comments may be made in the presence of the jury.[5] The comments and trial rulings that this court made do not stem from any alleged "sympathies" with former prisoners, former members of the Black Panther Party or former subjects of Government investigations. To the contrary, the comments were based solely on the evidence presented in this case and the events which occurred during the course of the trial. As such, they were expressly within the power conferred upon the federal judiciary and cannot be considered as a basis for recusal. Accordingly, for all of the foregoing reasons, defendants' motion is denied.

---

**5.** As the court stated in its jury instructions in the instant case:

"In a federal court, the judge may, in his or her discretion, summarize and comment upon the evidence presented in the case, and any

inferences which may be drawn from such evidence. However, I am not going to do so. I am going to leave it entirely up to you to decide what the true facts in this case are." Tr., 2405.